

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1346-17

## PABLO ALFARO-JIMENEZ, Appellant

## v.

## THE STATE OF TEXAS

## ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE FOURTH COURT OF APPEALS
## BEXAR COUNTY

NEWELL, J., filed an opinion in which KEASLER, HERVEY, RICHARDSON, YEARY, KEEL, WALKER and SLAUGHTER, JJ., joined. KELLER, P.J., dissented.

Appellant Pablo Alfaro-Jimenez carried around a fake social security card in his wallet and admitted that he used it to get work. But to convict Appellant of tampering with a governmental record under the theory of liability authorized by the indictment in this case, the State had to prove

that Appellant had possessed or presented a real social security card. The State did not prove that in this case. Consequently, we reverse the court of appeals' holding that the evidence was sufficient to support Appellant's conviction.

**Facts**

On July 10, 2014, San Antonio Police Officer Edward Rodriguez was dispatched to an apartment after a woman called 911 saying her ex-boyfriend, who she identified as Juan Alberto Torres Landa, "was at the location, banging on the door, kicking on the door, screaming, yelling, making threats to her." By the time the officer got there, Appellant had left. After a report had been taken from the woman, Appellant approached the officer, saying that "he wanted to set the record straight." Officer Rodriguez handcuffed Appellant for officer safety and asked Appellant his name. Appellant said it was "Juan Alberto Torres Landa."

Officer Rodriguez asked for some ID, and Appellant said it was in his wallet in his back pocket. He then gestured for Officer Rodriguez to take the wallet from his pocket. Officer Rodriguez opened the wallet and took out an ID, an alien card, a Mexican driver's license, and a social security card. All documents bore the name "Juan Alberto Torres Landa," but Officer Rodriguez immediately recognized that the social security card

was fake. The paper was too thin for an authentic social security card issued by the government. Additionally, the ink on the card had smudged in a manner inconsistent with a government-issued social security card.

Officer Rodriguez checked the social security number. It matched a person from Vietnam, but Appellant did not appear to be Vietnamese. Based upon the information he had gathered about the social security card, Officer Rodriguez placed Appellant under arrest for tampering with a governmental record. At that point Appellant admitted that his real name was Pablo Alfaro-Jimenez, contrary to the information on his various forms of identification, including the social security card.

The State charged Appellant with tampering with a governmental record. The indictment contained alternative paragraphs, both of which alleged that the record at issue was "a governmental record." The first paragraph alleged that Appellant had presented a social security card "with knowledge of its falsity,"[1] and the second paragraph alleged that Appellant had possessed the social security card "with the intent that it be used unlawfully."[2] Both paragraphs alleged that Appellant had committed the offense with the "intent to defraud or harm" the Social

---

[1] *See* TEX. PENAL CODE § 37.10(a)(5).

[2] *See* TEX. PENAL CODE § 37.10(a)(4).

Security Administration, which elevated the degree of offense.[3]

## Trial

At trial, Officer Rodriguez testified about Appellant's arrest. Regarding the card he found in Appellant's possession, Officer Rodriguez explained that he immediately recognized that the social security card was a fake:

Q    When you got the Social Security card, what did you notice about it?

A    Immediately looked at the paper. I noticed it was a little too flimsy, kind of—edges was kind of tearing off, it was like a bad kind of paper. And I noticed the ink was not dark, it was kind of faded. I looked down in the left-hand corner and you could see where drops of water or something was on the ink and it started to dry out and blur with a wet mark on there, which Social Security cards don't do that.

The State also called a criminal investigator for the United States Social Security Administration who testified that the card seized from Appellant was not an authentic social security card. The investigator acknowledged that social security cards are issued by a governmental agency and that they are governmental records. But the investigator explained that Appellant had possessed a counterfeit card with a real

---

[3] TEX. PENAL CODE § 37.10(c)(1).

social security number printed on it.

> Q      Okay. As far as this Social Security card is concerned, then, is there anything you can tell us about the use of this card number?

> A      All I can say is that this number was miss—the number on the card was misused because it's actually—it's printed on a counterfeit card, that's all I can say how it was used.

Appellant testified in his own defense, describing the card at issue and how he got it. Appellant admitted that the card was a fake.

> Q      Now, do you admit that that Social Security card—Did you get that Social Security card from the Social Security Office?

> A      No.

> Q      Where did you get it?

> A      A guy sold it to me so I could get a job.

> Q      How much did you pay for it?

> A      Sixty dollars.

> Q      Where did the number on the Social Security card come from?

> A      They made it up.

The jury charge included multiple different definitions of "governmental record." At the charge conference, the trial court stated that it would, on the defense's request, give an instruction on the lesser-

included offense of tampering with a governmental record without the intent to defraud element. The jury charge mirrored the indictment, except that it included the lesser-included offense. The jury convicted Appellant of the lesser-included offense.

The trial court reset the case for sentencing. At the sentencing hearing, the trial court entered a conviction for a Class A misdemeanor based upon the trial court's reading of the statute. Neither party objected, and the trial court sentenced Appellant to one year in jail, probated for two years along with a $1,500 fine.

## Appeal

Appellant challenged the sufficiency of the evidence, arguing, among other things, that the State never proved that the fake social security card was a governmental record.[4] The State argued that a social security card is a governmental record issued by the United States Social Security Administration and that social security numbers are used for identification as well as for employment and applying for loans or benefits.[5] The State also asserted that Appellant's conviction for a Class A misdemeanor amounted to an "illegal sentence" because a social security card is a

---

[4] Appellant's Direct Appeal Br. 7.

[5] State's Direct Appeal Br. 25.

certificate issued by the United States, and therefore the offense of conviction is a third-degree felony.[6]

In this regard, the State argued that "a" social security card is a governmental record.[7] But Appellant had actually argued that the evidence was insufficient to show that "the" social security card—the one Appellant possessed and presented in this case—was a certificate issued by government, by another state, or by the United States. Compounding the problem, the court of appeals analyzed the sufficiency of the evidence for the underlying conviction under a different statutory subsection than the ones relied upon by the State to convict Appellant.[8]

Ultimately, the court of appeals adopted the State's arguments and reformed the judgment to reflect a conviction for a third-degree felony. In doing so, the court of appeals held that the evidence was legally sufficient to establish that the record Appellant possessed and presented was a governmental record because it was a certificate issued by the

---

[6] State's Direct Appeal Br. 26-27; *see* TEX. PENAL CODE § 37.10 (c)(2)(A).

[7] The only definition of "governmental record" urged in this case is the one found in § 37.01(2)(C). The State argued to the court of appeals that the social security card in this case was a governmental record because it was a certificate issued by the United States. State's Direct Appeal Br.25-26.

[8] *Alfaro-Jimenez v. State*, 536 S.W.3d 579, 590 (Tex. App.—San Antonio 2017) (op. on reh'g) (setting out elements of tampering with a governmental document under § 37.10(a)(2)).

United States.[9] The court of appeals then remanded the case for new punishment hearing.[10]

Appellant filed a petition for discretionary review challenging the court of appeals' decision.[11] Though Appellant couches his issues in terms of a violation of his right to a jury,[12] Appellant also argues, in part, that the evidence was insufficient to establish that Appellant's fake social security card was a governmental record.[13] Appellant's sufficiency claim is subsumed within the grounds we granted for review. To the extent that Appellant's sufficiency challenge is not contained within the granted

---

[9] *Id.* at 590-91 (citing the § 37.01(2)(C) definition and the § 37.10(c)(2)(A) elevating element).

[10] *Id.* at 591.

[11] Appellant's Pet. 15-16.

[12] Appellant asked, and we granted review on, the following questions:

1. Whether the right to a jury trial mandated by U.S. Const. Sixth and Fourteenth Amendments, and U.S. Const. art. III § 2, and the concepts set out by [the Supreme Court] in *Apprendi* and *Blakely*, is violated by the procedure utilized by the Court of Appeals, that is, a judicial finding of an element not alleged in the indictment or submitted to the jury, which is an unacceptable departure from the jury tradition, an indispensable part of our criminal justice system, by making appellate courts fact finders as to an element not considered by the jury?

2. Whether the right to a jury trial and Due Process required by the Fifth, Sixth, and Fourteenth Amendments, and *Jackson v. Virginia*, 443 U.S. 307, 560 (1979), was violated when the Court of Appeals reformed the Petitioner's conviction to the conviction of a higher offense, when such higher offense was not determined by the jury, the factfinder resulting in a reformed verdict which was not rendered by the jury or the trial court?

[13] Appellant's Br. 9.

points of error, we exercise our authority to review the court of appeals' decision in this regard on our own motion.[14] We agree with Appellant that the State did not prove at trial that *the* social security card found in Appellant's wallet was a governmental record.

## Analysis

In assessing the sufficiency of the evidence to support a criminal conviction, "we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt."[15] The elements of the offense are defined by the hypothetically correct jury charge.[16] This hypothetically correct jury charge accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant

---

[14] TEX. CODE CRIM. PROC., art. 44.45(a). ("The Court of Criminal Appeals may review decisions of the court of appeals on its own motion."); TEX. R. APP. P. 66.1, 67.1.

[15] *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (*citing Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)).

[16] *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

was tried.[17]  "As authorized by the indictment" means the statutory elements of the offense as modified by the charging instrument.[18]

Of course, in some cases, sufficiency of the evidence also turns on the meaning of the statute under which the defendant has been prosecuted.[19]  In other words, does certain conduct actually constitute an offense under the statute with which the defendant has been charged? That question, like all statutory construction questions, is a question of law, which we review de novo.[20]

Texas Penal Code § 37.10, the "Tampering with Governmental Record" statute, is complicated, covering a multitude of potential harms.[21] The offense can be committed six different ways[22]—and may involve a

---

[17] *Ramjattansingh v. State*, 548 S.W.3d 540, 546 (Tex. Crim. App. 2018).

[18] *Id.*

[19] *Liverman v. State*, 470 S.W.3d 831, 836 (Tex. Crim. App. 2015).

[20] *Id*.

[21] *State v. Vasilas*, 187 S.W.3d 486, 492 (Tex. Crim. App. 2006) ("The legislature obviously meant to protect the people of the State by making it a crime to tamper with governmental records. By enacting § 37.10, the legislature intended to prevent a multitude of harms, including the destruction of governmental records, the perpetration of a fraud upon the court, and the miscarriage of justice that could result from the use of falsified records. There is nothing absurd about the legislature criminalizing such conduct.").

[22] TEX. PENAL CODE § 37.10(a) ("A person commits an offense if he: (1) knowingly makes a false entry in, or false alteration of, a governmental record; (2) makes, presents, or uses any record, document, or thing with knowledge of its falsity and with intent that it be taken as a genuine governmental record; (3) intentionally destroys, conceals, removes, or otherwise impairs the verity, legibility, or availability of a governmental record; (4) possesses, sells, or offers to sell a governmental record or a blank governmental record form with intent that it be used unlawfully; (5) makes, presents, or uses a governmental record

real "governmental record" (itself defined six different ways[23]) or a fake one.[24] It sets out offenses ranging from a Class A misdemeanor[25] to a second-degree felony.[26] The degree of offense is determined by the type of record tampered with (e.g., a license or certificate issued by government, a ballistics report, a document to establish a student's residency, an appraisal filed by an interested person) and whether or not the "actor's intent is to defraud or harm another."[27]

Here, the State charged Appellant with committing an offense under § 37.10(a)(4) and § 37.10(a)(5). Those subsections make it an offense if a person:

(4) possesses, sells, or offers to sell *a governmental record* or

---

with knowledge of its falsity; or (6) possesses, sells, or offers to sell a governmental record or a blank governmental record form with knowledge that it was obtained unlawfully.").

[23] TEX. PENAL CODE § 37.01(2). We have previously held that the Legislature's definition of a governmental record is "clear and unambiguous." *Vasilas*, 187 S.W.3d at 491 ("Although the petition for expunction was not a governmental record when Appellee prepared it, it became a governmental record once the court received it and he used it in seeking to obtain the expunction of records.").

[24] TEX. PENAL CODE § 37.10(a)(2).

[25] TEX. PENAL CODE § 37.10(c)(1) ("Except as provided by Subdivisions (2), (3), and (4) and by Subsection (d), an offense under this section is a Class A misdemeanor unless the actor's intent is to defraud or harm another, in which event the offense is a state jail felony.").

[26] TEX. PENAL CODE § 37.10(c)(2)(A) ("An offense under this section is a felony of the third degree . . . unless the actor's intent is to defraud or harm another, in which event the offense is a felony of the second degree[.]"). *See also* TEX. PENAL CODE § 37.10(d)(3).

[27] TEX. PENAL CODE § 37.10 (c), (d).

blank *governmental record* form with intent that it be used unlawfully;

(5) makes, presents, or uses *a governmental record* with knowledge of its falsity[.][28]

According to their plain language, both subsections require proof that the document the defendant possessed or presented was a "governmental record." In other words, those subsections do not provide for a conviction by merely proving that the defendant intended for a fake document to be taken as a genuine governmental record.

By way of contrast, § 37.10(a)(2) does not require proof that the record presented was an authentic governmental record. Under that subsection, it is an offense if a person:

(2) makes, presents, or uses *any record, document, or thing* with knowledge of its falsity and with intent that it be taken as a genuine governmental record[.][29]

Section 37.10(a)(2) is designed for the prosecution of someone who presents a counterfeit governmental record as if it were authentic. But that was not a theory authorized by the indictment in this case.

By indicting Appellant for tampering with a governmental record under § 37.10 (a)(4) and § 37.10(a)(5), the State was required to prove

---

[28] TEX. PENAL CODE § 37.10(a)(4), (5) (emphasis added).

[29] TEX. PENAL CODE § 37.10(a)(2) (emphasis added).

that the social security card at issue was an actual governmental record, not merely that Appellant intended the social security card be taken as a genuine governmental record.[30]  Under the tampering statute, "governmental record" means:

> (A) anything belonging to, received by, or kept by government for information, including a court record;
>
> (B) anything required by law to be kept by others for information of government;
>
> (C) a license, certificate, permit, seal, title, letter of patent, or similar document issued by government, by another state, or by the United States;
>
> (D) a standard proof of motor vehicle liability insurance form described by Section 601.081, Transportation Code, a certificate of an insurance company described by Section 601.083 of that code, a document purporting to be such a form or certificate that is not issued by an insurer authorized to write motor vehicle liability insurance in this state, an electronic submission in a form described by Section 502.046(i), Transportation Code, or an evidence of financial responsibility described by Section 601.053 of that code;
>
> (E) an official ballot or other election record; or
>
> (F) the written documentation a mobile food unit is required to obtain under Section 437.0074, Health and Safety Code.[31]

---

[30] *See, e.g., Thompson v. State*, 215 S.W.3d 557, 559 (Tex. App.—Texarkana 2007, no pet.) (an actual driver's license is a "license, certificate, permit, seal, title, letter of patent, or similar document issued by government, by another state, or by the United States"; a counterfeit driver's license is not).

[31] Tex. Penal Code § 37.01(2).

The court of appeals held that the evidence was sufficient to establish that the record at issue in this case was a governmental record because "the testimony clearly supported the social security card was a certificate."[32] We agree with the court of appeals that a social security card is a certificate issued by the United States.[33] But we disagree with the court of appeals that the testimony clearly supported that Appellant possessed or presented a social security card issued by the United States. The State did not prove that. The State proved that Appellant possessed a fake social security card, not a real one.

During opening statements, the prosecution noted that the social security card was not "authentic." Later, the prosecutor stated that the social security card merely purported to be a legitimate, authentic social security card. Officer Rodriguez testified that he immediately recognized that the social security card was a fake because of the blurred ink and low quality paper. And when asked to identify the card he had seized from Appellant, the officer stated that the card was "a forgery, a counterfeit, a false Social Security card." The criminal investigator for the United

---

[32] *Alfaro-Jimenez*, 536 S.W.3d at 591.

[33] *See, e.g., Lopez v. State*, 25 S.W.3d 926, 929 (Tex. App.—Houston [1st Dist.] 2000, no pet.).

States Social Security Administration also testified that the card seized from Appellant was not an authentic social security card. At no point did the investigator testify that the card possessed and presented by Appellant had been issued by the United States or any governmental agency. Finally, Appellant himself admitted that the card was a fake. Appellant had paid sixty dollars to "a guy" to make the card so Appellant could use it to get a job; Appellant admitted that he did not get it from the Social Security Office.

Simply put, the State elicited testimony establishing that "a" social security card is a governmental record.[34] The State did not present any evidence that "the" social security card possessed or presented by Appellant "was" a governmental record.

Though we have not dealt with this type of scenario before, at least one intermediate court of appeals has. In *Thompson v. State*, the defendant was charged with altering a governmental record after police discovered numerous counterfeit driver's licenses on the defendant's

---

[34] *See, e.g., Lopez*, 25 S.W.3d at 929 (a social security card is a "certificate issued by the United States" and so a "governmental record" under Section 37.01(2)(C) and an elevating element under Section 37.10(c)(2)(A)); *see also Ramos v. State*, 303 S.W.3d 302, 309-10 (Tex. Crim. App. 2009) (Keller, P.J., dissenting) (forgery of a social security card is forgery under TEX. PEN. CODE § 32.21(e)(2), which covers a writing that is or purports to be "a government record listed in Section 37.01(2)(C)").

computer.[35]  The State argued that those "counterfeit licenses" were governmental records because the statutory definition of "governmental records" includes "licenses issued by the government," and a Texas driver's license constitutes a governmental record.[36] The Texarkana Court of Appeals agreed that "a driver's license is a governmental record," but nevertheless held the evidence insufficient because there was no evidence that the licenses in the case had been issued by the government.[37]

We find the reasoning of the Texarkana Court of Appeals persuasive, and we reach the same conclusion in this case.  Social security cards are governmental records.  However, the State did not prove that the fake social security card at issue in this case was a governmental record. Consequently, the evidence was legally insufficient to support the conviction.  We reverse the judgment of the court of appeals and render an acquittal.

Delivered: July 3, 2019

Publish

---

[35] *Thompson*, 215 S.W.3d at 558.

[36] *Id.* at 558-59.

[37] *Id.* at 559.