**AFFIRMED as MODIFIED and Opinion Filed February 28, 2023**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-00414-CR**

**ISAAC PUGH, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 219th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 219-81674-2021**

## MEMORANDUM OPINION

Before Justices Reichek, Nowell, and Garcia
Opinion by Justice Reichek

Following a jury trial, Isaac Pugh appeals his conviction for the offense of burglary of a habitation while committing or attempting to commit kidnapping. In two issues, appellant contends (1) the evidence is legally insufficient to prove he committed or attempted to commit kidnapping and (2) the jury charge erroneously allowed the jury to convict on a theory of guilt not alleged in the indictment. For reasons that follow, appellant's issues lack merit. On our own motion, we modify the trial court's judgment to correct certain clerical errors. As modified, we affirm the trial court's judgment.

## Background

The evidence at trial showed that on Tuesday, February 2, 2021, appellant broke into his ex-wife Misti Pugh's house in Celina, Texas, and took their two-year-old child, LP. Under their custody arrangement, appellant had custody of LP every first, third, and fifth weekend and every Wednesday night for a couple of hours. The Wednesday prior to the offense Misti did not exchange LP with appellant. A few days before the break in, Misti's neighbor saw appellant stop his truck in front of Misti's house and then drive off. Although the neighbor did not know appellant, appellant stopped to talk to her about LP. Appellant said the child's mom "is going to get what's coming to her."

The break in occurred at about 8 p.m. on February 2. Appellant broke through a glass storm door, shattering the glass, and a wooden front door at Misti's house. Misti and LP were in the living room at the time. Appellant began yelling and screaming and also ripped off his shirt. He yelled at Misti, "[Y]ou can't keep my kid from me." Appellant moved toward LP, and Misti got in between the two of them. When she tried to phone for help, appellant knocked the phone out of her hand, grabbed her hair, and threw her on the floor. He then stepped on Misti's hand so she could not retrieve her phone. Appellant grabbed LP and ran out of the house. He had left his truck running and left the truck door open. He threw LP into the truck and drove off.

The Celina Police Department (CPD) tracked the GPS location on appellant's cell phone. Pings first indicated appellant was in Whitesboro, Texas, about 25 miles

–2–

northwest of Celina, and then in Sherman. Around midnight, police got a couple of pings from McKinney. The information from the cell phone pings was not specific enough to ever pinpoint appellant's location. Eventually, CPD issued an AMBER Alert for LP. After the AMBER Alert went out, police stopped receiving the pings. The phone company informed CPD it was likely appellant turned off his cell phone.

Police tried to track appellant through his credit card usage, without success. Officers also contacted appellant's friends and family in an attempt to locate him. Multiple people told CPD Detective Joshua Armstrong that appellant was unstable and thought LP was being sexually assaulted. One person said she loaned appellant money for an attorney a few hours before appellant showed up at Misti's house.

Appellant's cell phone records revealed that before he took LP he had been trying to contact a family law attorney named George Parker. Police spoke to Parker early on the morning of February 3, and Parker informed them he did not represent appellant and had not spoken with him about LP. That afternoon, appellant showed up with LP at Parker's law office in downtown McKinney. On the advice of Parker, appellant called the CPD. He spoke to Detective Armstrong. Armstrong convinced appellant to step outside, where he was arrested by officers with the McKinney Police Department. LP was found unharmed. He was missing for about 16 hours.

Appellant was charged by indictment with burglary of a habitation while committing or attempting to commit kidnapping. *See* TEX. PENAL CODE ANN. §

30.02(a)(3), (d). The jury found appellant guilty, and the trial court assessed his punishment at nine years' confinement. This appeal followed.

### Sufficiency of the Evidence

In his first issue, appellant contends the evidence is legally insufficient to support his conviction because the State did not prove he committed or attempted to commit kidnapping. He argues the evidence is insufficient to show he intended to prevent LP's liberation by secreting him or holding him in a place where he was not likely to be found.

We measure the legal sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Hammack v. State*, 622 S.W.3d 910, 914 (Tex. Crim. App. 2021) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). A hypothetically correct charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.*

In assessing the sufficiency of the evidence, we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational factfinder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Alfaro-Jimenez v. State*, 577 S.W.3d 240, 243–44 (Tex. Crim. App. 2019). This standard requires that we defer "to the responsibility of the trier

of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Zuniga v. State*, 551 S.W.3d 729, 732 (Tex. Crim. App. 2018). Each fact need not point directly and independently to guilt if the cumulative force of all incriminating circumstances is sufficient to support the conviction. *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018).

As charged in this case, a person commits burglary of a habitation when he enters a habitation without the effective consent of the owner and commits or attempts to commit a felony, theft, or assault. TEX. PENAL CODE ANN. § 30.02(a)(3). Burglary of a habitation is generally a second-degree felony, but is a first-degree felony when the defendant commits or attempts to commit a felony other than felony theft. *Id.* § 30.02(d). Here, the underlying felony was kidnapping. A person commits the offense of kidnapping if he intentionally or knowingly abducts another person. *Id.* § 20.03(a). "Abduct," as it applies in this case, means to restrain a person with intent to prevent his liberation by secreting him or holding him in a place where he is not likely to be found.[1] *Id.* § 20.01(2)(A).

Appellant argues the evidence showed he took LP to the office of a "well known family lawyer," who had about 20 employees, and had intended to do so

---

[1] A person can also abduct someone by restraining him with intent to prevent his liberation by using or threatening to use deadly force. TEX. PENAL CODE ANN. § 20.01(2)(B). There was no evidence appellant used or threatened to use deadly force.

–5–

before he took LP. According to appellant, because he took LP to a law office, the State did not prove he intended to secret LP to a place where he would not likely be found. Appellant also argues the evidence is insufficient to show he intended to hide LP before they arrived at the law office. Appellant refers to that 16-hour time period as the time "*en route* to George Parker's office." He argues that placing LP in the passenger's seat of his truck did not show an intent to secret the child and suggests the evidence needed to show more overt actions to secret LP.

The State was not required to prove that appellant actually secreted or held LP in a place he was not likely to be found. *See Laster v. State*, 275 S.W.3d 512, 521 (Tex. Crim. App. 2009). "Abduct" involves two elements; the defendant must have restrained another and also must have had the specific intent to prevent liberation. *Id*. The offense of kidnapping is legally completed when the defendant, at any time during the restraint, forms the intent to prevent liberation by secreting or holding another in a place unlikely to be found. *Id.*

We conclude the evidence was legally sufficient to prove appellant intentionally or knowingly abducted LP. The evidence showed that prior to the offense, appellant indicated that something bad was going to happen to Misti. A short time later, he took two-year-old LP from Misti's house with force. He violently entered Misti's home to get LP and attacked her when she tried to phone for help. Appellant left his vehicle running with the door open to make it easier for him to get away with the child. Then he did not remain in one place; he drove to different

locations in North Texas, from Celina to Whitesboro to Sherman to McKinney. After an AMBER Alert was issued, police stopped receiving GPS information from appellant's phone. The jury could have reasonably inferred appellant turned off his cell phone to prevent being located. The fact that appellant showed up with LP at a busy law office 16 hours after taking him does not mean that appellant did not commit kidnapping. Viewing the evidence in the light most favorable to the verdict, the jury could have found that appellant intended to prevent LP's liberation by secreting or holding him in a place where he was unlikely to be found. We overrule appellant's first issue.

## Alleged Jury Charge Error

In a second issue, appellant contends the trial court erroneously charged the jury on a theory of guilt that was not alleged in the indictment.[2] The indictment alleged appellant entered the habitation without effective consent of the owner and committed or attempted to commit kidnapping. The application paragraph instructed the jury:

> if you find from the evidence beyond a reasonable doubt that . . . the defendant, **ISAAC PUGH**, did then and there intentionally and knowingly, without the effective consent of Misti Pugh, the owner thereof, enter a habitation *with the intent to commit the felony offense of kidnapping*, attempted to commit or committed the felony offense of

---

[2] After appellant's brief was filed, his court-appointed counsel moved to withdraw. We granted the motion and ordered the trial court to appoint new counsel for appellant. Once appointed, new counsel had the option to file a new brief replacing the brief filed by former counsel, file a supplemental brief, or adopt the original brief. Counsel filed a supplemental brief raising this issue.

kidnapping, then you will find the defendant guilty as charged in the indictment.

(Emphasis added.) Appellant was not charged with committing burglary by entering a habitation with intent to commit kidnapping. *See* TEX. PENAL CODE ANN. § 30.02(a)(1). Appellant contends the error caused him egregious harm.

As the State concedes, the charge erroneously authorized a conviction on a theory of burglary not alleged in the indictment. *See Sanchez v. State*, 376 S.W.3d 767, 773 (Tex. Crim. App. 2012) (instructions must conform to allegations in indictment). Because no objection was made to the charge, we consider whether the error egregiously harmed appellant. *See Alcoser v. State*, No. PD-0166-20, 2022 WL 947580, at *3 (Tex. Crim. App. March 30, 2022). Harm is assessed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of the probative evidence, the argument of counsel, and any other relevant information revealed by the record of the trial as a whole. *Id.* An erroneous jury charge is egregiously harmful if it affects the very basis of the case, deprives the accused of a valuable right, or vitally affects a defensive theory. *Id.* A finding of egregious harm must be based on actual harm rather than theoretical harm. *Id.* Egregious harm is a difficult standard to meet, and the analysis is a fact-specific one. *Id.*

We conclude appellant was not egregiously harmed. At trial, the focus was on whether what happened after appellant entered Misti's home without consent was

a kidnapping. During closing arguments, the State did not argue that appellant committed something short of a completed kidnapping. It did not argue appellant attempted to kidnap LP, which was a theory authorized by the indictment. Its theory was that appellant completed the offense of kidnapping. Defense counsel argued that for various reasons a kidnapping had not occurred, all of which acknowledged that appellant removed LP from his mother's home: appellant took LP to protect him; appellant did not commit kidnapping because he did not take LP somewhere he could not be found; a father could not kidnap his own child; and the amount of time appellant had LP was not long enough to constitute kidnapping.

Further, the evidence overwhelmingly showed that appellant completed the offense of kidnapping. Appellant broke into his ex-wife's home to grab LP and take off with him in his vehicle, evading detection for 16 hours. There was nothing in the evidence to show that appellant broke into Misti's house without her consent with an intent to commit a kidnapping that was not actually carried out. In addition, the verdict form did not include the intent to commit kidnapping theory. It stated, "We, the Jury, find the defendant GUILTY of the offense of Burglary of a Habitation attempting to commit or having committed Kidnapping as charged in the indictment." The erroneous charge did not affect the very basis of the case, deprive appellant of a valuable right, or vitally affect a defensive theory. We overrule appellant's second issue.

**Clerical Errors in the Judgment**

–9–

Although not raised by either party, the trial court's judgment contains several clerical errors. First, the judgment does not accurately reflect that the trial court assessed punishment in this case. The record shows that appellant elected for the trial judge to assess his punishment, and the judge did so. Next, the judgment incorrectly states that the degree of the offense was a second-degree felony. Burglary of a habitation while committing or attempting to commit kidnapping is a first-degree felony. TEX. PENAL CODE ANN. § 30.02(d). Similarly, the judgment reflects the wrong statute for the offense. It lists § 30.02(c)(2), which is second-degree burglary of a habitation, instead of § 30.02(d), the first-degree felony provision at issue here. In addition, the judgment states "APPEAL WAIVED, NO PERMISSION TO APPEAL GRANTED." The trial court's certification of appellant's right of appeal certified that this was not a plea-bargain case and appellant had the right of appeal.

This Court has the power to modify a judgment to make the record speak the truth when we have the necessary information before us to do so and may do so on its own motion. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 28 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.— Dallas 1991, pet. ref'd). Accordingly, we modify the trial court's judgment in the following ways: to reflect that the trial court, not the jury, assessed punishment; to reflect that the degree of the offense was a first-degree felony; to reflect that the

statute for the offense was penal code § 30.02(d); and to delete the language stating that appellant waived his appeal and was not given permission to appeal.

As modified, we affirm the trial court's judgment.

/Amanda L. Reichek/
AMANDA L. REICHEK
JUSTICE

Do Not Publish.
TEX. R. APP. P. 47.2(b).
220414F.U05



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

ISAAC PUGH, Appellant

No. 05-22-00414-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 219th Judicial District Court, Collin County, Texas
Trial Court Cause No. 219-81674-2021.
Opinion delivered by Justice Reichek. Justices Nowell and Garcia participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

On the first page of the judgment:

The section titled "Statute for Offense:" is modified to state "30.02(d) Penal Code."

The section titled "Degree of Offense:" is modified to state "1ST DEGREE FELONY."

The section titled "Punishment Assessed by:" is modified to state "Court."

On the second page of the judgment:

The section titled "Punishment Assessed by Jury/Court/No election (select one)" is modified to uncheck the box next to "Jury" and to check the box next to "Court."

On the third page of the judgment:

The following language is deleted:  "APPEAL WAIVED. NO PERMISSION TO APPEAL GRANTED."

As modified, the judgment is **AFFIRMED**.

Judgment entered this 28th day of February, 2023.