

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-24-00044-CR
_____


SCOTT LEE MARTIN, Appellant

V.

THE STATE OF TEXAS, Appellee



On Appeal from the 6th District Court
Lamar County, Texas
Trial Court No. 30547



Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin

MEMORANDUM OPINION

During a 2023 report to the Lamar County Sheriff's Office (LCSO), Scott Lee Martin, a convicted sex offender, revealed that he had a social-media account. He claimed to have created it recently. Records from the social media company, though, showed that the online account had been created years earlier, in 2020. At trial, Martin admitted to creating the account at that time. In 2020, Martin was living inside the city limits of Paris, Texas, and reporting to the Paris Police Department (PPD).

The indictment alleged that Martin failed to report the creation of a new online account within seven days of its creation and that he failed to make that report to the LCSO. Martin contends that his conviction[1] under the new online account reporting duty cannot stand, because the State accused him of failing to report to the LCSO at a time when he was reporting to the PPD and had no duty to report to the LCSO.

In *Herron v. State*, the Texas Court of Criminal Appeals held that the numerous statutory reporting duties of sex offenders must be treated as separate offenses subject to separate pleading and proof. *Herron v. State*, 625 S.W.3d 144, 153 (Tex. Crim. App. 2021). *Herron* also held that an indictment's allegation regarding to whom the report should have been made frames the evaluation of the evidence under the "hypothetically correct jury charge." *Id.* at 158. The State relies on *Young v. State*, where the Texas Court of Criminal Appeals held that "[j]urors must unanimously agree only that a sex offender failed to fulfill his reporting duty; they are not required to agree as to how he failed that duty." *Young v. State*, 341 S.W.3d 417, 427–28 (Tex.

---

[1]Martin was convicted "as charged in the [i]ndictment" and sentenced to fifty years' imprisonment.

2

Crim. App. 2011). *Young*, though, dealt with a separate statutory duty, the duty regarding a change in an offender's physical residence. *Id.* The change-of-residence statute has provisions regarding reporting a move twice: once in the current location at least seven days before the move and again in the new location no later than seven days after the move. *Id.*; *see* TEX. CODE CRIM. PROC. ANN. art. 62.055(a) (Supp.). It is in that context that *Young* held that failure to report the move either beforehand or afterwards are two means of committing a single crime. *Young*, 341 S.W.3d at 427–28. The State urges that the logic of "one crime per move" should permit Martin's conviction to stand under what would amount to "one crime per online account." We do not see *Young*'s holding as permitting this. First, because that case and this one deal with different statutes. Second, because the account was created, and the seven days elapsed, while Martin was living in Paris. Third, because there are other statutory provisions regarding the reporting of online accounts, provisions which, under *Herron*, set forth separate reporting duties.

Based on the indictment in this case, pursuant to *Herron*, we reverse and render a judgment of acquittal regarding Martin's conviction under Article 62.0551(a) of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 62.0551(a).

I. **Background**

A. **The Evidence at Trial**

The evidence shows that Martin had prior convictions in Potter County for sexual offenses and that he was required to register as a sex offender.[2] Martin's duty to register has several components. *See* TEX. CODE CRIM. PROC. ANN. arts. 62.001–.408. From July 19, 2018,

---

[2]*See* TEX. CODE CRIM. PROC. ANN. arts. 62.001(5), 62.051(a) (Supp.).

3

through May 20, 2020, Martin resided inside the city limits of Paris and verified his sex-offender registration with Officer Curtis Garrett of the PPD. On March 3, 2020, Martin opened a Facebook account. After Martin moved out of the city limits of Paris but to a location still within Lamar County, he verified his sex-offender registration with the LCSO from July 16, 2020, through September 5, 2023.

Martin verified his sex-offender registration with Curtis Graham, a deputy with the LCSO, on February 16, May 18, and September 5, 2023. Graham testified that, on September 5, 2023, Martin disclosed that he had a Facebook account when Graham asked if he had one. Graham testified that he had asked the same question about online identifiers[3] on two prior visits with Martin but that Martin had not disclosed the Facebook account. Based on his review of information from the Texas Secure Sex-Offender Registry, Graham testified that, although Martin had disclosed his email address to the other LCSO deputies with whom he registered, the only time Martin reported an online identifier, i.e., the Facebook account, to LCSO or any other agency was on September 5, 2023.

Graham also testified that Martin told him that his Facebook account was under the name "Scott Martin," but Graham was unable to find a Facebook account under that name. Later, he was told by a lieutenant with the LCSO Criminal Investigation Division that there was a

---

[3]An "[o]nline identifier" is defined as

> electronic mail address information or a name used by a person when sending or receiving an instant message, social networking communication, or similar Internet communication or when participating in an Internet chat. The term includes an assumed name, nickname, pseudonym, moniker, or user name established by a person for use in connection with an electronic mail address, chat or instant chat room platform, commercial social networking site, or online picture-sharing service.

TEX. CODE CRIM. PROC. ANN. art. 62.001(12) (Supp.).

Facebook account that belonged to Martin under another name, "Scott Marten," with a registered email of "Scottyleemart@gmail.com."[4]

Martin admitted that he had prior sexual offenses and that he had a duty to register as a sex offender every three months for life. He also admitted that he opened a Facebook account around March 3, 2020. Martin maintained that, when he opened the Facebook account, he reported it to Garrett when Garrett asked him if there were any new online identifiers. He also testified that he told Garrett that he registered the Facebook account under "Marten Scott" at one of his regular ninety-day meetings. Martin explained that, since he reported it to Garrett, he did not need to report it again because it was not new. He also denied that Graham had asked him if he had a Facebook account in February or May 2023.

### B. Procedural Background

The indictment in this case alleged that

> **MARTIN** on or about September 05, 2023 in Lamar County, Texas, did then and there, while knowing that he was required to register under Chapter 62 of the Texas Code of Criminal Procedure because of a reportable conviction or adjudication based upon Aggravated Sexual Assault of a Child, and after having established a new online identifier not already included on the defendant's sex offender registration form, namely a Facebook account, fail[ed] to comply with a requirement of Chapter 62, by failing to report to the defendant's primary registration authority, namely the Lamar County Sheriff's Office, and the defendant failed to report the establishment within seven days after the change.

It is undisputed that Martin was charged under Article 62.0551(a) of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 62.0551(a). On appeal, Martin asserts that the evidence was insufficient to support his conviction because the State failed to show that, at the

---

[4]That was the same email address that Martin had disclosed to the LCSO deputies with whom he registered.

5

time he established his Facebook account, he had a duty to report its establishment to the LCSO. Stated differently, Martin asserts that the State failed to show that, at the time he established his Facebook account, his primary registration authority was the LCSO. We agree.

## II. Standard of Review

"In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt." *Williamson v. State*, 589 S.W.3d 292, 297 (Tex. App.—Texarkana 2019, pet. ref'd) (citing *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010)). "The elements of the offense are defined by the hypothetically-correct jury charge." *Herron v. State*, 625 S.W.3d 144, 152 (Tex. Crim. App. 2021) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "The hypothetically-correct jury charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* (citing *Ramjattansingh v. State*, 548 S.W.3d 540, 546 (Tex. Crim. App. 2018)). "'As authorized by the indictment' means the statutory elements of the offense as modified by the charging instrument." *Id.* (quoting *Ramjattansingh*, 548 S.W.3d at 546). "When a Texas statute lists more than one method of committing an offense or definition of an element of an offense, and the indictment alleges some, but not all, of the statutorily listed methods or definitions, the State is limited to the methods and definitions alleged." *Id.* (citing *Ramjattansingh*, 548 S.W.3d at 546). "However, the hypothetically-correct jury charge 'does not necessarily have to track exactly all of the

6

charging instrument's allegations.'" *Id.* (quoting *Ramjattansingh*, 548 S.W.3d at 546). "Whether an allegation must be included in the hypothetically-correct jury charge depends on whether the variance between the allegation and proof is material." *Id.* (citing *Ramjattansingh*, 548 S.W.3d at 546–47).

Normally, we evaluate the sufficiency of the evidence by considering "the evidence in relation to each element of the offense while giving deference to 'the responsibility of the trier of fact to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "In some instances, however, the sufficiency of the evidence instead turns on the meaning of the statute under which the defendant has been prosecuted; '[i]n other words, does certain conduct actually constitute an offense under the statute with which the defendant has been charged?'" *Id.* (alteration in original) (quoting *Alfaro-Jimenez v. State*, 577 S.W.3d 240, 244 (Tex. Crim. App. 2019)). "That question, like all statutory construction questions, is a question of law that we review *de novo*." *Id.* at 152–53 (citing *Alfaro-Jimenez*, 577 S.W.3d at 244).

"When we interpret statutes, we look to the literal text of the statute and attempt to discern the fair, objective meaning of the text at the time of its enactment." *Id.* at 153 (citing *Day v. State*, 614 S.W.3d 121, 127 (Tex. Crim. App. 2020)). In our analysis, "[w]e presume that (1) every word has been used for a purpose and that each word, phrase, clause, and sentence should be given effect if reasonably possible, and (2) the Legislature intended for the entire statutory scheme to be effective." *Id.* (quoting *Crabtree v. State*, 389 S.W.3d 820, 825 (Tex.

7

Crim. App. 2012)). "If the plain language is clear and unambiguous, our analysis ends because 'the Legislature must be understood to mean what it has expressed, and it is not for the courts to add or subtract from such a statute.'" *Id.* (quoting *Day*, 614 S.W.3d at 127).

## III. Analysis

The indictment cites Article 62.102 of the Texas Code of Criminal Procedure. But the Texas Court of Criminal Appeals has held that Article 62.102 is an "umbrella" provision that sets forth the criminal penalties accompanying the "numerous" sex-offender reporting duties found within Chapter 62 of the Texas Code of Criminal Procedure. *Id.* Consequently, "to support conviction under [Article 62.102], the fact-finder must identify and unanimously agree about the violation of a single statutory duty [found elsewhere in Chapter 62]." *Id.* Accordingly, "the State must allege and prove" a violation of a specific Chapter 62 duty provision which gives rise to Article 62.102 criminal liability. *Id.* (citing *Young*, 341 S.W.3d at 425).

As a result, the resolution of this case requires us to "look to the particular failure alleged in the indictment . . . and the corresponding statutory provision[s] in Chapter 62 to determine whether the fact-finder could have rationally found that [Martin] violated the statutory requirement *as alleged*." *Id.* at 153–54 (emphasis added).

In this case, the State alleged that Martin violated Article 62.0551(a) by failing to notify the LCSO of a new online identifier within seven days of the online identifier's creation. Article 62.0551(a) provides, as relevant to this case:

> (a) If a person required to register under this chapter . . . establishes any new online identifier not already included on the person's registration form, the person, not later than the later of the seventh day after the . . . establishment or the first date the applicable authority by policy allows the person to report, shall

8

report the . . . establishment to the person's primary registration authority in the manner prescribed by the authority.

TEX. CODE CRIM. PROC. ANN. art. 62.0551(a). The duty to report under the plain language of this statute is triggered when a person who is required to register "establishes any new online identifier not already included on the person's registration form." *Id.* If he does so, the statute requires him to report the establishment of the new online identifier to his "primary registration authority" and to do so no later than either seven days after the establishment or the first date that authority by policy allows him to report. *Id.* Because the statute requires the person to report the establishment to his primary registration authority within a few days of the establishment of the new online identifier, we must determine the identity of that authority at the time of the establishment.

Chapter 62 provides that the Texas Department of Public Safety "determine[s] which local law enforcement authority serves as the person's primary registration authority based on the municipality or county in which the person resides or, as provided by Article 62.152, the municipality or county in which the person works or attends school." TEX. CODE CRIM. PROC. ANN. art. 62.004(a); *see* TEX. CODE CRIM. PROC. ANN. art. 62.001(1) (Supp.). In a municipality, the "'[l]ocal law enforcement agency' means . . . the office of the chief of police," and in a county (but outside of a municipality within that county) it means "the office of the sheriff." TEX. CODE CRIM. PROC. ANN. art. 62.001(2) (Supp.).

As a result, under the applicable statutes, when Martin resided inside the city limits of Paris, his primary registration authority was the office of the chief of police of Paris, and when

he resided in Lamar County and outside the city limits, his primary registration authority was the LCSO.

The evidence was uncontested that Martin established his Facebook account on March 3, 2020, and that from July 19, 2018, through May 20, 2020, Martin resided inside the city limits of Paris and verified his sex-offender registration with Garrett of the PPD. As a result, the evidence showed that the office of the chief of police of Paris was Martin's primary registration authority when he established the new online identifier, namely his Facebook account. In sum, the evidence showed that the seven-day time period of Article 62.0551(a) expired while Martin lived in Paris and reported to the PPD.

However, in this case, the State alleged that Martin violated Article 62.0551(a) by failing to report the establishment of the Facebook account within seven days "to the defendant's primary registration authority, namely the Lamar County Sheriff's Office."

The outcome here turns on that allegation. The Texas Court of Criminal Appeals has held that, when the State alleges that a defendant violated a duty under Chapter 62 by failing to register in a specific location, "the hypothetically-correct jury charge would include that allegation." *Herron*, 625 S.W.3d at 158; *see Simpkins v. State*, 300 S.W.3d 860, 863 (Tex. App.—Texarkana 2009, no pet.). The State is bound to the location alleged, "such that [Martin] cannot be convicted of failure to register in some other location under the instant indictment even if the evidence were to support it." *Herron*, 625 S.W.3d at 158.

In 2020, when Martin created the Facebook account and for the seven days thereafter, he lived in Paris and was reporting to the PPD. As a result, as a matter of law, we find that the

evidence in the record, as measured by the hypothetically correct jury charge, did not establish a violation of a duty under Article 62.0551(a) to report to the LCSO.

The State argues that the jury could have reasonably found that Martin failed to report the Facebook account to the LCSO when he moved from inside the city limits of Paris to Lamar County. The State does not contend that, within seven days of the account's creation in 2020, Article 62.0551(a) required Martin to report the establishment of the Facebook account to the LCSO. Rather, the State argues that, under a theory of "one crime per move," Martin was obligated to report the establishment of the account to the LCSO within seven days of moving outside of the Paris city limits but within Lamar County, citing *Young*, 341 S.W.3d at 426. *Young*, though, was interpreting the change-of-address duty found in Article 62.055(a), which provides, in pertinent part:

> If a person required to register under this chapter intends to change address . . . the person shall, not later than the seventh day before the intended change, report in person to the local law enforcement authority . . . and provide the authority and the officer with the person's anticipated move date and new address. If the person required to register changes address, the person shall, not later than . . . the seventh day after changing the address . . . report in person to the local law enforcement authority in the municipality or county in which the person's new residence is located and provide the authority with proof of identify and proof of residence.

*Young*, 341 S.W.3d at 420 n.3 (quoting TEX. CODE CRIM. PROC. ANN. art. 62.055(a)). The court noted that "[t]he language of Article 62.055 states that a sex offender has a duty to report a change of address to the proper authorities both before and after a move. Failure to comply is an offense." *Id.* at 427 (citing TEX. CODE CRIM. PROC. ANN. art. 62.102(a)). It then explained that "[r]eporting a change of address 'not later than the seventh day before the intended change' and

11

'not later than the . . . seventh day after changing the address' are therefore alternative manners and means of committing a single offense." *Id.* In other words, the court held that for each change of address the person failed to report, there was only one crime per move, but it could be committed in two different ways. *Id.* at 428. Again, though, *Young* was examining Article 62.055(a). *Id.*

In contrast, Article 62.0551(a) provides for one offense, i.e., failing to report the establishment of a "new online identifier," and one manner and means of committing it, i.e., failing to "report the . . . establishment to the person's primary registration authority" within seven days. TEX. CODE CRIM. PROC. ANN. art. 62.0551(a). Those seven days expired before Martin moved out of the city limits of Paris but within Lamar County. Thus, throughout the time period of Article 62.0551(a), Martin had one primary registration authority: the PPD. Further, the State's assertion of "one crime per online identifier" would be inconsistent with other provisions of Chapter 62 regarding "online identifiers." *See, e.g.*, TEX. CODE CRIM. PROC. ANN. art. 62.051(c)(7), (g).

We sustain Martin's first issue.[5]

When we find the evidence is insufficient, we must determine whether the conviction should be reformed to "reflect a conviction for a lesser-included offense." *Thornton v. State*, 425 S.W.3d 289, 300 (Tex. Crim. App. 2014). A conviction should be reformed if (1) every element necessary to prove the lesser-included offense was necessarily found by the fact-finder when the appellant was convicted of the greater offense, and (2) the evidence is sufficient to support a

---

[5]Because we have sustained this issue, we need not address Martin's second issue.

12

conviction for the lesser-included offense. *Id.* Given the above analysis regarding the hypothetically correct jury charge in light of the indictment, we cannot reform the judgment to reflect an Article 62.0551(a) conviction.

## IV. Disposition

Based on the indictment in this case, pursuant to *Herron*, we reverse and render a judgment of acquittal regarding Martin's conviction under Article 62.0551(a).


Jeff Rambin
Justice

Date Submitted:    August 14, 2024
Date Decided:     October 25, 2024

Do Not Publish