**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-23-00326-CR**
_____

**ROBERT JEREMY LANE SMITH, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Court at Law No. 5**
**Montgomery County, Texas**
**Trial Cause No. 23-378036**

**MEMORANDUM OPINION**

A jury found Robert Jeremy Lane Smith guilty of the class A misdemeanor offense of assault causing bodily injury against a family member. *See* Tex. Penal Code Ann. § 22.01(b). On appeal, Smith argues that insufficient evidence supports his conviction because the State failed to prove that Smith caused bodily injury and that the State further failed to prove that bodily injury was caused in the manner charged in the information. Because there was sufficient evidence to sustain the conviction, we affirm.

1

Background

After *Jane* interviewed Smith for a job, the pair began dating.[1] After continued arguments with Smith, Jane moved in with Julia Rosheger, believing it would give the couple space while continuing to be together. However, Smith moved into Julia's home with Jane despite Julia's disapproval. Julia described Jane and Smith's relationship as "explosive" because the couple "fought constantly." Julia was very often concerned for Jane's safety.

In the early morning hours of June 8, 2023, Julia called police because she was concerned for Jane's safety. Julia was prompted to call the police after she heard Jane yelling for help from the opposite side of the house. She heard Jane tell Smith, "You are hurting me, stop hurting me[.]" Smith and Jane were arguing nonstop in the three days leading up to the assault.

After hearing Jane call for help, Julia went to Jane's bedroom to check on her. Julia opened the door and discovered Smith had pinned Jane down to the bed. Smith leaned over Jane, wrapping his arms around Jane's legs as he held her hands together against her chest. Jane's knees were drawn to her chest, and she could not get up. After warning Smith that she would call the police if he did not let go of Jane, Julia

---

[1]To protect the identity of the victim, we use a pseudonym for her name. *See* Tex. Const. art. I, § 30(a)(1) (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process"). The first time a pseudonym is used for a person's name, we indicate a pseudonym is being used with italics.

left the bedroom. When Julia came back to the bedroom door, Smith "still had ahold of [Jane], only this time it was a little more intense." Jane was lying on her back with her "head [] up off the pillows a ways" and her knees bent. Smith was standing, leaning over Jane with his hands around Jane's throat. Jane didn't say anything when Smith's hands were around her throat, but Julia observed Jane's "mouth was kind of open and her face was beet red. She looked like she could not – she looked like she was hurt, like he was hurting her and she could not breath[e]." Julia immediately called 911 after seeing Smith's hands around Jane's neck.

Deputy John Garcia with the Montgomery County Sheriff's Office responded to the call. When he arrived on scene, he looked for Smith on the scene but could not find him. Smith had left the residence shortly before deputies arrived. Garcia observed Jane to be "a little agitated, seemed emotional, seemed upset." Jane initially talked to Garcia, but she soon became "dodgy" and refused to give details about what happened. Garcia observed older scratches on both of Jane's outer forearms as well as red marks around her chest area and on both sides of her neck. Moreover, Garcia suspected that Jane urinated on herself in fear as he observed the backside of Jane's pants were wet. Based on his conversations with Jane, Garcia determined Smith was the primary aggressor.

Julia also testified that when deputies arrived, she observed red marks around Jane's throat and the upper part of her body. The next day, Julia noted that these red

3

marks had turned into bruises. Julia saw bruises on Jane's upper torso, around her rib cage, on her arms, on her wrists, and around her neck.

Detective Joshuah Boone with the Montgomery County Sheriff's Office was assigned the case for further investigation. He testified that Garcia's report documented scratches and red marks to Jane's chest and neck area. Boone explained that red marks are considered bodily injury. He interviewed Jane, who told him that "she felt pain during the physical contact, during the physical assault[]" and that Smith caused this pain.

Jane testified at trial that she and Smith were probably arguing all day leading up to the assault. She admitted that Smith had physically assaulted her, but it was because she hit him. She couldn't remember how she hit Smith but said she "had to have done something like that in order for him to retaliate[.]" She remembered Smith was holding her down, but she couldn't recall what part of his body made contact with her body. She could not remember whether Smith choked her but stated that "he probably did, his hands were around my neck[.]" She could not recall if she had any marks or bruises on her body after Smith held her down. She explained that she peed on herself because of her age.

Standard of Review and Applicable Law

To sustain a conviction for assault, the State must prove beyond a reasonable doubt that the person "intentionally, knowingly, or recklessly cause[d] bodily injury

4

to another[.]" Tex. Penal Code Ann. § 22.01(a)(1). Bodily injury means "physical pain, illness, or any impairment of physical condition." *Id*. § 1.07(a)(8). Other courts have concluded the State proved bodily injury where a victim complained of pain, had "fresh scratch marks[,]" or had bruising. *See Settlemyre v. State*, 489 S.W.3d 607, 609 (Tex. App.—Eastland 2016, pet. ref'd); *Nunez v. State*, 117 S.W.3d 309, 323 (Tex. App.—Corpus Christi 2003, no pet.) ("Bruising is evidence of physical pain sufficient to show 'bodily injury.'").

The jury is the exclusive judge of the credibility of the evidence and the weight to be given to that evidence. *Metcalf v. State*, 597 S.W.3d 847, 855 (Tex. Crim. App. 2020). As such, the jury is responsible for resolving conflicts in the testimony, is free to believe some, all or none of a witness's testimony, and may assign as much or as little weight to a witness's testimony as it sees fit. *Id*. Jurors may also draw reasonable inferences from the evidence. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). "[A]n inference is a conclusion reached by considering other facts and deducing a logical consequence from them." *Id*. at 16.

When examining whether a criminal conviction is supported by legally sufficient evidence, we compare the evidence to the elements of the offense as defined by a hypothetically correct charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). We consider all the evidence, viewed in the light most favorable to the verdict, along with the inferences that could reasonably be drawn

from the evidence. *Hooper*, 214 S.W.3d at 13. We do not assess the credibility of the evidence, reweigh the evidence, nor substitute our judgment for that of the jury. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

The evidence is legally sufficient to support the conviction if any rational trier of fact could have found each of the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). "Each fact need not point directly and independently to a defendant's guilt, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Balderas v. State*, 517 S.W.3d 756, 766 (Tex. Crim. App. 2016) (citation omitted); *see also Garcia v. State*, 667 S.W.3d 756, 761-62 (Tex. Crim. App. 2023) (citation omitted) ("A proper review of evidentiary sufficiency considers the cumulative force of the evidence.").

The elements of the offense are defined by the hypothetically correct jury charge. *Alfaro-Jimenez v. State*, 577 S.W.3d 240, 244 (Tex. Crim. App. 2019). A hypothetically correct jury charge (1) accurately sets out the law, (2) is authorized by the indictment, (3) does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and (4) adequately describes the particular offense for which the defendant was tried. *Dunham v. State*, 666 S.W.3d 477, 482 (Tex. Crim. App. 2023). "[A] hypothetically correct charge need not incorporate allegations that give rise to immaterial variances." *Johnson v. State*,

364 S.W.3d 292, 294 (Tex. Crim. App. 2012) (quoting *Gollihar v. State*, 46 S.W.3d 243, 256 (Tex. Crim. App. 2001)).

Analysis

Smith argues there is insufficient evidence to support a conviction because the State failed to prove the manner and means of the assault alleged in the information: "pushing [Jane] with his hands and grabbing [Jane's] wrist with his hands, and holding [Jane] down with his hands[.]" However, the State was not required to prove the manner and means of causing the injury alleged in the information. *See Johnson*, 364 S.W.3d at 298-99 (holding that the State was not required to prove the allegation in the indictment for aggravated assault that the defendant hit the victim with his hand or twisted the victim's arm with his hand because any variance between the allegation and proof at trial would be immaterial); *see also Hernandez v. State*, 556 S.W.3d 308, 316 (Tex. Crim. App. 2017). "The manner and means of the bodily injury alleged is not an essential element of the offense and therefore is not included within the hypothetically correct jury charge." *Thomas v. State*, 303 S.W.3d 331, 333 (Tex. App.—El Paso 2009, no pet.). In this case, a hypothetically correct jury charge for the offense of assault would ask whether Smith intentionally, knowingly, or recklessly caused bodily injury to Jane. *See* Tex. Penal Code Ann. § 22.01(a)(1); *Thomas*, 303 S.W.3d at 333. As a result, any variance between a non-statutory

7

allegation in the information and the proof at trial is immaterial and "should be disregarded in a legal-sufficiency analysis." *Hernandez*, 556 S.W.3d at 327.

After reviewing the entire record under the hypothetically correct jury charge, we conclude the evidence was legally sufficient to support Smith's conviction. The State presented evidence that Smith physically pinned Jane on the bed with her hands crossed over her chest and her knees drawn up to her chest. Julia and Jane testified Smith's hands were around Jane's neck. Although Jane did not testify at trial that Smith's actions caused her to feel pain, she told Detective Boone that she was in pain during the assault, and other witnesses testified that they saw red marks and scratches around Jane's chest and neck immediately after the assault. Julia also testified that she observed bruises on Jane's body in the days following the assault. Moreover, Julia testified that she heard Jane yell "you are hurting me, stop hurting me" to Smith during the altercation.

The jury, as the sole trier of fact, was free to weigh the witnesses' credibility and resolve conflicts in the evidence. *See Williams,* 235 S.W.3d at 750; *Hooper*, 214 S.W.3d at 13. The evidence showed that during the assault Jane suffered pain and sustained scratch marks that later turned into bruises, satisfying the "bodily injury" element. *See Settlemyre*, 489 S.W.3d at 609; *Nunez*, 117 S.W.3d at 323. Based on the evidence, a rational trier of fact could conclude beyond a reasonable doubt that Smith knowingly, intentionally, or recklessly caused Jane bodily injury, and that

they were in a dating relationship. *See* Tex. Penal Code Ann. §§ 1.07(a)(8), 22.01(a). Thus, the evidence was legally sufficient to support Smith's conviction. *See Jackson*, 443 U.S. at 318-19; *Metcalf*, 597 S.W.3d at 855; *Hooper*, 214 S.W.3d at 13. We overrule Smith's sole issue.

## Conclusion

The judgment of the trial court is affirmed.

AFFIRMED.

KENT CHAMBERS
Justice

Submitted on June 25, 2025
Opinion Delivered July 2, 2025
Do Not Publish

Before Golemon, C.J., Johnson and Chambers, JJ.

9