**Opinion issued May 18, 2023**



In The

# Court of Appeals

### For The

# First District of Texas

———————————

### NO. 01-21-00569-CR

———————————

### TYRIK TURNER, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

### On Appeal from the 174th District Court
### Harris County, Texas
### Trial Court Case No. 1640818

---

### MEMORANDUM OPINION

A jury found appellant Tyrik Turner guilty of the offense of aggravated robbery. *See* TEX. PENAL CODE § 29.03. The jury assessed Turner's punishment at 22 years' imprisonment. In three appellate issues, Turner challenges the sufficiency of the evidence to support his conviction (issue one), and he contends that the trial

court committed reversible error in admitting extraneous-offense evidence (issues two and three).

We affirm.

## Background

On July 9, 2019, shortly before 1:00 a.m., Carlos Maceda-Jimenez (Jimenez) parked his Chevy truck on Trevor Way, near the apartment complex where he lived. As he was getting out of his truck, two male assailants ran up to him demanding that he give them the keys to the vehicle. Each assailant pointed a handgun at Jimenez. One assailant was wearing a red hoodie and the other was wearing a gray hoodie. Jimenez also had a handgun, and he and the assailants exchanged gunfire. Jimenez was shot three times, and the assailant in the red hoodie was also shot. The assailants fled, running north on Trevor Way.

Jimenez walked to his apartment and was taken to Houston Northwest Hospital by his sister. Jimenez survived his injuries.

Shortly after the two assailants fled from Jimenez's truck, a person who identified himself as "Little T" called 9-1-1. He said that his location was the La Monterra Apartments. The caller reported that he was with someone who had been shot. The caller sounded distraught and said that the person was dying.

Deputy F. Salgado of the Harris County Sherriff's Office was dispatched to the scene. When he arrived, Deputy Salgado found a man wearing a red hoodie lying

2

on grass outside the fence of the La Monterra Apartments. The man, later identified as Kyron Hagen, had been shot and was struggling to breathe. Hagen was taken by ambulance to Houston Northwest Hospital but was pronounced dead on arrival.

Deputy Salgado spoke to a witness at the apartment complex who had heard gunshots. The witness told Deputy Salgado that he had looked out his window and saw two males running north on Trevor Way. He then saw Hagen on the ground and heard the other male telling him not to die.

Based on this information, Deputy Salgado and other officers walked from the apartment complex south on Trevor Way. About 300 feet from where Hagen had been found, the officers saw a Chevy truck parked on Trevor Way with its rear window shattered. They also noticed that the truck had bullet holes. Deputy Salgado learned that a second person, Jimenez, had been taken to Houston Northwest Hospital with gunshot wounds. Another officer went to the hospital to speak with Jimenez. Jimenez told the officer that he owned the Chevy truck. Deputy Salgado testified that the officer also learned from Jimenez that Jimenez had been "rushed" by two "unknown black males holding guns." Jimenez had then "pulled his weapon and a gunfight ensued, both parties exchanging gunfire."

Deputy Salgado noticed that Jimenez's truck was parked next to a car dealership and that the dealership had surveillance cameras pointing at Trevor Way.

3

The sheriff's department contacted the dealership and obtained surveillance videos recorded from different camera angles.

The videos were provided to Sergeant R. Martinez, a sheriff's department homicide investigator. One video had been recorded by a camera pointing at the area on Trevor Way where Jimenez's truck was parked and had captured the aggravated robbery of Jimenez. At trial, Sergeant Martinez testified that he used a computer "tool" that allowed him to zoom in on the individuals in the red and gray hoodies seen in the video to obtain closer images of them.

The video showed two males, one wearing a red hoodie and the other a gray hoodie, run up to Jimenez as he was getting out of his truck. Both assailants had an arm outstretched and were pointing something at Jimenez. Sergeant Martinez noted that the video showed the assailant in the gray hoodie pointing his hand toward Jimenez's head. Sergeant Martinez testified that the video appeared to show "a firearm pistol robbery" of Jimenez. He stated that muzzle flashes seen in the video indicated that Jimenez and the assailants exchanged gunfire.

While Sergeant Martinez testified, the State played the surveillance video frame by frame, and Sergeant Martinez provided a narration of what was shown in the frames. In one frame, Sergeant Martinez testified that the assailant in the gray hoodie was behind the truck discharging his firearm toward Jimenez who was near the driver's side door. In another frame, Sergeant Martinez testified that the assailant

4

in the gray hoodie was shown discharging his firearm, aiming toward the truck's back window while Jimenez was inside the truck, which was consistent with the truck's shattered back window.

After the exchange of gunfire, a video from another camera angle showed both assailants running north on Trevor Way. They stopped near the driveway of the La Monterra Apartments where the assailant in the red hoodie collapsed. The assailant in the gray hoodie remained, standing next to him. Sergeant Martinez testified that, in the video, the assailant wearing the gray hoodie appeared to be using a cell phone. Sergeant Martinez testified that he had then obtained the 9-1-1 records for the calls placed relating to the incident, including the call in which the caller identified himself as "Little T." In that call, "[a] male [was] requesting help, [saying] that his friend had been shot." Sergeant Martinez said that, in the background of the call, "a male" could be heard "gurgling" and trying to catch his breath, indicating to him that the caller was near someone who was injured.

Sergeant Martinez determined the telephone number for the call made by Little T. There were also two other 9-1-1 calls from that number, including a hang-up call. Sergeant Martinez obtained an "ad hoc report" from the telephone company for the number. The report provided the longitude and latitude coordinates for the location from which the calls had originated. Sergeant Martinez testified that the coordinates corresponded to the "scene location" on Trevor Way. He also

determined that the telephone number belonged to Tyrik Turner. Sergeant Martinez obtained Turner's photograph and his physical description. Sergeant Martinez determined that Turner fit the description of the assailant in the surveillance video who was wearing the gray hoodie.

Jimenez was shown a photo array that included Turner's photograph, but he was unable to identify Turner as an assailant. At trial, Jimenez explained that he was unable to recognize the assailants because it was dark, and the incident had happened quickly. He also testified that he was focused on the guns that the assailants were pointing at him and not focused on their faces.

On July 23, 2019, Houston Police Officer C. Meade pulled over an SUV driven by Keithen Williams in which Turner was a passenger. Turner provided his phone number to Officer Meade. The number was the same phone number from which the 9-1-1 calls regarding Hagen been placed. During the traffic stop, Officer Meade found two handguns in a backpack in the SUV's rear cargo area. Officer Meade testified that Williams was arrested at the scene and was later charged "with possession of firearms," but Turner was not arrested and was released at the scene of the stop. S. Tokay with the Harris County Institute of Forensic Sciences testified that he tested shell casings recovered near Jimenez's truck. The testing linked the casings to the two firearms found in the backpack recovered from Williams's SUV.

On July 31, 2019, Turner was arrested for the offense of aggravated robbery. He was transported to the sheriff's homicide office where he was questioned by Sergeant Martinez and another officer. Before the questioning began, Turner was advised of his *Miranda* and statutory rights.[1] During the interview, which was recorded, Turner admitted that he and Hagen had intended to rob Jimenez of his pickup truck. Turner also admitted that he was right behind Hagen when they approached Jimenez. Turner said that Hagen was wearing a red hoodie.[2]

In his statement, Turner acknowledged that he knew Hagen had a gun. He said that, when Hagen and Jimenez exchanged gunfire, he took cover first behind the truck and then on its passenger side. Sergeant Martinez testified that Turner's description of where he had been in relation to the truck was consistent with what was shown in the surveillance video. Turner stated that he and Hagen ran from the scene and that Hagen collapsed near the driveway of the La Monterra Apartments. He admitted that he called 9-1-1 and that he told the dispatcher that his name was "Little T." Sergeant Martinez testified that, from Turner's description of the events in his statement, he determined that Turner was the assailant in the gray hoodie.

---

[1]     *See Miranda v. Arizona*, 384 U.S. 436 (1966) (expanded and codified in TEX. CODE CRIM. PROC. art. 38.22).

[2]     During the interview, Turner told Sergeant Martinez that Jimenez had shot Hagen. In its brief, the State acknowledges that it was "State's theory that Jimenez struck Hagen when he shot in self-defense" and that "[n]o one accused [Turner] of shooting Hagen."

The State indicted Turner for the offense of aggravated robbery. Among the State's witnesses presented at trial were (1) Deputy Salgado, (2) Sergeant Martinez, (3) Officer Meade, (4) Tokay, and (5) Jimenez. The State's evidence also included (1) the recordings of the 9-1-1 calls, (2) the surveillance videos from the car dealership, and (3) the audio and visual recordings of Turner's statement.

The jury found Turner guilty of the offense of aggravated robbery and assessed his punishment as 22 years in prison. This appeal followed. Turner raises three issues on appeal.

## Sufficiency of the Evidence

In his first issue, Turner contends that the evidence was insufficient to support the judgment of conviction.

## A.      Standard of Review and Aggravated Robbery Elements

We review a challenge to the sufficiency of the evidence under the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307 (1979). *See Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013). Pursuant to the *Jackson* standard, we "consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Alfaro-Jimenez v. State*, 577 S.W.3d 240, 243 (Tex. Crim. App. 2019) (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)); *see Jackson*, 443 U.S.

8

at 319. We can hold evidence to be insufficient under the *Jackson* standard when (1) the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense, or (2) the evidence conclusively establishes a reasonable doubt. *Britain v. State*, 412 S.W.3d 518, 520 (Tex. Crim. App. 2013) (citing *Jackson*, 443 U.S. at 320).

The sufficiency-of-the-evidence standard gives full play to the responsibility of the fact finder to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). An appellate court presumes that the fact finder resolved any conflicts in the evidence in favor of the verdict and defers to that resolution, provided that the resolution is rational. *See Jackson*, 443 U.S. at 326.

Our review of the record includes all of the evidence introduced, whether it was properly or improperly admitted. *See Winfrey*, 393 S.W.3d at 767 (stating courts consider admissible and inadmissible evidence presented at trial when conducting sufficiency analysis). Direct and circumstantial evidence are treated equally; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Hooper*, 214 S.W.3d at 13. Finally, "[e]ach fact need not point directly and

9

independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Id.*

## B.  Analysis

To establish that he committed the offense of aggravated robbery as alleged in the indictment, the State was required to prove that Turner, while in the course of committing theft of property owned by Jimenez, and with intent to obtain and maintain control of the property, intentionally and knowingly threatened and placed Jimenez in fear of imminent bodily injury and death while using and exhibit a deadly weapon, namely, a firearm. *See* TEX. PENAL CODE § 29.03(a)(2) (defining elements of aggravated robbery with deadly weapon); § 29.02(a)(2) (defining elements of robbery); *see also id.* § 1.07(17)(A) (defining "deadly weapon" to include firearm). A person commits theft if he appropriates property without the owner's consent and with intent to deprive the owner of the property. *Id.* at § 31.03(a), (b)(1). "'In the course of committing theft' means conduct that occurs in an attempt to commit, during the commission, or in the immediate flight after the attempt or commission of theft." *Id.* at § 29.01(1). As part of its burden, the State must prove, beyond a reasonable doubt, the accused's identity as the person who committed the charged offense. *See Johnson v. State*, 673 S.W.2d 190, 196 (Tex. Crim. App. 1984); *Smith v. State*, 56 S.W.3d 739, 744 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd).

10

In the trial court, Turner's primary defense was that the State failed to show that he was one of the assailants who committed the offense of aggravated robbery against Jimenez. To determine whether there is sufficient evidence that a defendant is the individual who committed the offense, we review the totality of the circumstances. *See Rohlfing v. State*, 612 S.W.2d 598, 601 (Tex. Crim. App. 1981). Identity may be proven by direct evidence, circumstantial evidence, or by reasonable inferences from the evidence. *Ingerson v. State*, 559 S.W.3d 501, 509 (Tex. Crim. App. 2018).

Here, the record contains sufficient evidence from which the jury could have found beyond a reasonable doubt that Turner committed the charged offense of aggravated robbery. The jury viewed the car dealership's surveillance videos. One of the videos showed that two assailants, one wearing a red hoodie and one wearing a gray hoodie, ran up to Jimenez as he got out of his truck. Each assailant had an arm outstretched pointing something at Jimenez. Muzzle flashes are seen in the video, indicating that Jimenez and the assailants exchanged gunfire. The two assailants then ran north on Trevor Way, stopping near the driveway of the La Monterra Apartments. There, the assailant in the red hoodie collapsed, and the assailant in the gray hoodie remained standing next to him. The assailant in the gray hoodie then appeared to be using a cell phone. The evidence showed that, around that time, an individual identifying himself as Little T called 9-1-1 to report that someone had

11

been shot, and a person can be heard gurgling and struggling to breathe in the background. The address he provided was the La Monterra Apartments. Two other calls to 9-1-1, including a hang-up call, were also placed from the same telephone number. The three 9-1-1 calls were admitted into evidence.

Deputy Salgado testified that, when he arrived at the La Monterra Apartments, Hagen, who was wearing a red hoodie, was lying on the ground. He had been shot and was struggling to breathe.

Sergeant Martinez testified that he obtained an ad hoc report from the telephone company for the number from which the 9-1-1 calls were placed. The report showed the coordinates for the location where the calls originated. Sergeant Martinez testified that the coordinates corresponded to the "scene location" on Trevor Way. Sergeant Martinez also testified that the telephone number belonged to Turner. He obtained a physical description and a photograph of Turner and determined that Turner fit the description of the assailant shown in the surveillance video who was wearing the gray hoodie.

Officer Meade testified that, on July 23, 2019, he pulled over an SUV driven by Williams in which Turner was a passenger. Turner told Officer Meade his phone number, which matched the number that had called 9-1-1 regarding Hagen. Officer Meade testified that he found two handguns in a backpack in the SUV's rear cargo area. He arrested Williams, who was charged with "possession of firearms," but he

12

released Turner at the scene. The jury also heard testimony from Tokay who had conducted forensic testing on the shell casings recovered near Jimenez's truck. His testimony linked the casings found near the truck to the two firearms found in Williams' SUV.

The State also introduced into evidence Turner's recorded statement, given after his arrest to Sergeant Martinez. In his statement, Turner admitted that he and Hagen had intended to take Jimenez's truck and that he was right behind Hagen when they approached Jimenez. Turner stated that Hagen was wearing a red hoodie, and he admitted that he was the person in the video behind, and then to the side of, Jimenez's truck while Jimenez and Hagen exchanged gunfire. The video showed that person was wearing a gray hoodie. Turner also acknowledged that he and Hagen ran from the scene, stopping near the entrance of the La Monterra Apartments. There, Hagen collapsed, and Turner admitted to calling 9-1-1 and identifying himself as Little T. During his statement, Turner also provided his cell phone number, which matched the number from which the 9-1-1 calls were made.

Turner argues that the evidence was not sufficient to establish his identity as an assailant because no eyewitnesses placed him at the scene. Turner points out that Jimenez could not identify him either in the photo array or in the courtroom.

It is well-established that eyewitness identification is not necessary to support a conviction. *See Gardner v. State*, 306 S.W.3d 274, 285–86 (Tex. Crim. App. 2009)

13

(concluding that evidence was sufficient to support conviction despite lack of eyewitness testimony); *Greene v. State*, 124 S.W.3d 789, 792 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (recognizing eyewitness identification not necessary to identify perpetrator). And, regarding his inability to identify Turner, Jimenez testified that, at the time of the offense, "it was dark and it happened so quickly." He also testified that he was focused on the firearms that the assailants were pointing at him and not focused on their faces. Thus, the jury could have reasonably inferred that Jimenez failed to identify Turner not because Turner was not an assailant but due to the circumstances surrounding the commission of the offense.

Turner also cites a lack of physical evidence. He points out that the State presented evidence showing that it had conducted DNA testing on samples taken from the crime scene and that Turner was excluded as a source of the DNA. He also points out that his fingerprints were not found on Jimenez's truck.

The lack of physical evidence does not render evidence supporting a conviction insufficient. *Harmon v. State*, 167 S.W.3d 610, 614 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). "A rational jury could have found [Turner] guilty of aggravated robbery without DNA evidence [or] fingerprint evidence . . .." *See id.*; *see Santos v. State*, 116 S.W.3d 447, 459 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (rejecting argument that lack of fingerprints connecting appellant to robbery rendered evidence insufficient to support conviction).

14

The evidence reflected that, while Jimenez and Hagen were both shot and left blood at the scene, the assailant in the gray hoodie was not injured during the commission of the offense. The evidence also showed that the assailant in the red hoodie had entered Jimenez's truck, but the assailant in the gray hoodie had not entered the truck. Thus, the jury could have reasonably inferred that a lack of DNA and fingerprint evidence pointing to Turner was consistent with the other evidence presented and did not mean that Turner was not an assailant.

Turner also suggests that the probative value of Turner's recorded statement was undermined by Sergeant Martinez's acknowledgement, during cross-examination, that he told several lies to Turner during the interview. For example, Sergeant Martinez acknowledged that he told Turner that his fingerprints were found on Jimenez's truck when that was not true. But, like the lack of eyewitness testimony identifying Turner as being at the scene and the lack of DNA and fingerprint evidence, Sergeant Martinez's interview technique was a factor for the jury to consider in weighing the evidence, and we defer to the jury's resolution of these issues. *See McGregor v. State*, 394 S.W.3d 90, 110 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd).

In sum, Turner attacks the sufficiency of the evidence by asserting that the State should have offered additional evidence and by pointing out alleged weaknesses in certain pieces of the State's evidence. However, when resolving a

sufficiency challenge, we must look at the combined and cumulative force of all the evidence. *See Merritt v. State*, 368 S.W.3d 516, 526 (Tex. Crim. App. 2012). Here, viewing the evidence in the light most favorable to the verdict and looking at the combined and cumulative force of the evidence, we conclude that a rational fact finder could have found that the State proved, beyond a reasonable doubt, Turner's identity as a person who committed the charged offense of aggravated robbery.

We next determine whether the State offered sufficient evidence to prove the remaining elements of the charged offense of aggravated robbery. That is, we determine whether the State proved that Turner, while in the course of committing theft of Jimenez's property, and with intent to obtain and maintain control of the property, intentionally and knowingly threatened and placed Jimenez in fear of imminent bodily injury and death while using and exhibit a deadly weapon, namely, a firearm. *See* TEX. PENAL CODE § 29.03(a)(2).

In his recorded statement, Turner admitted that he and Hagen had decided to take Jimenez's truck and that he had approached Jimenez with Hagen. Jimenez testified that both assailants rushed him. He said that each assailant pointed a firearm at him and demanded that he give them the keys to his truck. Jimenez also testified that both assailants shot at him. The surveillance video corroborated Jimenez's testimony, showing both assailants pointing something at Jimenez. The video and

16

Sergeant Martinez's testimony also showed that the assailant in the gray hoodie had discharged his firearm, aiming it toward Jimenez.

Viewing the evidence in the light most favorable to the verdict, we conclude a rational fact finder could have found beyond a reasonable doubt each element necessary to support the jury's finding that Turner committed the charged offense of aggravated robbery. Accordingly, we hold that the evidence was legally sufficient to support the judgment of conviction for that offense.

We overrule Turner's first issue.

## Admission of Extraneous-Offense Evidence

In his second issue, Turner contends that the trial court erred in admitting evidence of the possession-of-firearm offense with which Williams was charged after Officer Meade pulled over Williams's SUV and found two handguns in a backpack in the rear cargo area of the SUV. As he did at trial, Turner asserts that evidence of the possession-of-firearm offense was not admissible extraneous-offense evidence under Rule of Evidence 404(b), and he claims that the evidence should have also been excluded under Rule of Evidence 403 because its probative value was outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403, 404(b). Specifically, Turner objected to Officer Meade's testimony about the possession-of-firearm offense, which included testimony that Turner was a passenger in Williams's SUV at the time Officer Meade found the handguns.

17

Tokay's subsequent testimony linked the handguns to shell casings found near Jimenez's truck.

## A. Legal Principles

We review a trial court's ruling on the admissibility of extraneous offenses for an abuse of discretion. *De La Paz v. State*, 279 S.W.3d 336, 343–44 (Tex. Crim. App. 2009). An extraneous offense is any act of misconduct, whether resulting in prosecution or not, which is not shown in the charging instrument and which was shown to have been committed by the accused. *Martinez v. State*, 190 S.W.3d 254, 262 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). Texas Rule of Evidence 404(b) prohibits the admission of extraneous-offense evidence solely to prove a person's character or to show that the person acted in conformity with that character. TEX. R. EVID. 404(b); *Blackwell v. State*, 193 S.W.3d 1, 8 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). The Texas Court of Criminal Appeals has held that Rule 404(b) applies not only to the extraneous acts of the accused but also to the acts of third parties. *Castaldo v. State*, 78 S.W.3d 345, 348–49 (Tex. Crim. App. 2002).

Evidence of extraneous offenses may, however, be admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." TEX. R. EVID. 404(b); *see Montgomery v. State*, 810 S.W.2d 372, 387 (Tex. Crim. App. 1990). Extraneous-offense evidence that is admissible under Rule 404(b) may still be excluded under Rule 403 if its probative

value is substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403; *Blackwell*, 193 S.W.3d at 9.

## B.      Harmless Error

Even if we assume without deciding that the trial court abused its discretion by admitting evidence of the possession-of-a-firearm offense, we will not reverse the judgment if the error was harmless. *See* TEX. R. APP. P. 44.2. Generally, error in admitting evidence concerning extraneous offenses is reviewed as non-constitutional error. *Robinson v. State*, 236 S.W.3d 260, 269 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd); *see Casey v. State*, 215 S.W.3d 870, 885 (Tex. Crim. App. 2007). Rule of Appellate Procedure 44.2(b) provides that an appellate court must disregard non-constitutional error not affecting a criminal defendant's substantial rights. *See* TEX. R. APP. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *Schmutz v. State*, 440 S.W.3d 29, 39 (Tex. Crim. App. 2014) (citing *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002)). In assessing the likelihood that the jury's decision was adversely affected by the error, an appellate court considers everything in the record. *Id.* This includes testimony, physical evidence, jury instructions, the State's theories, any defensive theories, closing arguments, and voir dire, if applicable. *Id.* (citing *Bagheri v. State*, 119 S.W.3d 755, 763 (Tex. Crim. App. 2003)). Important factors include the nature of the evidence supporting the

verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case and may also include whether the State emphasized the error and whether overwhelming evidence of guilt was present. *Id.*

Here, the alleged error involved the admission of third-party extraneous-offense evidence that was of a dissimilar character to the charged offense. While it referenced the extraneous-offense evidence in its closing statement, the State did not emphasize it. Instead, the State mentioned it as one of several pieces of evidence connecting Turner to the offense. The more powerful evidence relied on by the State was the surveillance video, the 9-1-1 evidence, and Turner's own inculpatory statement.

The record also shows that Turner's counsel relied on the extraneous-offense evidence in his closing statement to support Turner's defense that he was not one of the assailants. He pointed out that the handguns linked to the charged offense were found in William's SUV and that the State had arrested and charged Williams, not Turner, for possessing the handguns. Relying on the possession-of-a-firearm offense against Williams, defense counsel asserted, "Mr. Williams, there's your robber."

Finally, as shown above in the sufficiency-of-the evidence analysis, the record contains ample evidence of Turner's guilt, aside from the extraneous-offense evidence. Jimenez's and Sergeant Martinez's testimony, combined with the surveillance videos, the 9-1-1 evidence, including the phone company records

20

showing that the 9-1-1 calls were made from Turner's phone number near the scene of the offense, and Turner's recorded statement. In his statement, Turner admitted that he and Hagen planned to rob Jimenez, he was right behind Hagen as they ran up to Jimenez to rob him, and he was present at the scene during the aggravated robbery.

After examining the record as a whole, we conclude that the admission of the extraneous-offense evidence did not affect Turner's substantial rights because we have a fair assurance that the error did not influence the jury or had but a slight effect. *See Motilla*, 78 S.W.3d at 355. We hold that any error in admitting the extraneous-offense evidence was not harmful error. *See* TEX. R. APP. P. 44.2(b).

**Notice of Extraneous-Offense Evidence**

In his third issue, Turner contends that the State failed to give notice of its intent to use the evidence related to possession-of-firearm offense charged against Williams. Under Rule 404(b), on timely request by a defendant, the State must provide reasonable notice before trial that it intends to introduce extraneous-offense evidence in its case-in-chief. TEX. R. EVID. 404(b); *see Hernandez v. State*, 176 S.W.3d 821, 822 (Tex. Crim. App. 2005). Even if we assume without deciding that the trial court abused its discretion by admitting the extraneous-offense evidence over Turner's objection regarding a lack of notice, we conclude that any error was harmless because it did not affect Turner's substantial rights. *See* TEX. R. APP. P. 44.2(b); *Hernandez*, 176 S.W.3d at 822–25 (recognizing Rule 44.2(b) harm analysis

21

applies to violation of Rule 404(b) notice provision). The purpose of the notice requirement is to avoid unfair surprise to the defendant and to enable him to prepare to answer the extraneous-misconduct evidence. *See Hernandez*, 176 S.W.3d at 823; *Apolinar v. State*, 106 S.W.3d 407, 414 (Tex. App.—Houston [1st Dist.] 2003), *aff'd*, 155 S.W.3d 184 (Tex. Crim. App. 2005).

The record shows that Turner cross-examined Officer Meade, the source of the testimony about the possession-of-firearm offense. The record reflects that Turner's trial strategy was to cast doubt on whether he was one of the assailants. Through Officer Meade, Turner's counsel elicited testimony that Williams was arrested and charged with possessing the two firearms linked to the aggravated robbery of Jimenez, while Turner was released at the scene of Williams's arrest. Defense counsel relied on this evidence to suggest to the jury that Williams, not Turner, was the assailant in the gray hoodie. Thus, any lack of notice did not affect Turner's trial strategy. To the contrary, Turner was able to use the evidence to support his defense. And, had there been a surprise requiring a re-evaluation of trial strategy, Turner could have requested a continuance, which he did not do. *See McDonald v. State*, 179 S.W.3d 571, 578 (Tex. Crim. App. 2005) (considering defendant's failure to request continuance as factor weighing against finding of harm when State failed to give timely Rule 404(b) notice); *see also Lindley v. State*, 635 S.W.2d 541, 544 (Tex. Crim. App. [Panel Op.] 1982) ("The failure to request a

postponement or seek a continuance waives any error urged in an appeal on the basis of surprise.").

We hold that any error in admitting the evidence of the possession-of-firearm offense without the State providing notice did not affect Turner's substantial rights because it did not influence the jury or had but a slight effect. *See* TEX. R. APP. P. 44.2(b). Accordingly, we hold that any error was not harmful error. *See id.*

We overrule Turner's third issue.

### Conclusion

We affirm the judgment of the trial court.

Richard Hightower
Justice

Panel consists of Justices Hightower, Rivas-Molloy, and Farris.

Do not publish. Tex. R. App. P. 47.2(b).