**Michael Anthony McGOWEN**

v.

**The STATE of Texas.**

**No. 09–93–003 CR.**

Court of Appeals of Texas, Beaumont.

Submitted Oct. 6, 1994.

Decided Oct. 26, 1994.

---

286

Thomas A. Chambers, Liberty, for appellant.

Michael R. Little, Dist. Atty., Liberty, for State.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

**OPINION**

BROOKSHIRE, Justice.

This is an appeal from a conviction by a jury of a felony offense of Escape. Count I alleged the offense of Escape against appellant McGowen. This appeal also lies from a conviction of the offense of Aggravated Assault set out in Count II. Defendant below pleaded not guilty to both counts. The jury found guilt on both counts.

The trial court found the Enhancement and Habitual paragraphs of the indictment to be true, sentencing the appellant to 25 years imprisonment on each count. These two 25 year sentences were ordered to run concurrently, but to run consecutively (i.e., stacked) after the appellant's previous 75 year sen-

tence. This 75 year sentence was meted out in trial cause number 19,348. This instant appeal, involving Escape and Aggravated Assault, bore trial cause number 19,717.

On or about March 31, 1992, after the appellant had been sentenced to 75 years in prison in trial cause number 19,348, McGowen was being escorted and taken from the Liberty County Courthouse to the Liberty County Jail. Before exiting the district courtroom, appellant was ordered by the sentencing trial judge into the custody of the Sheriff of Liberty County so that appellant could be transported to the State penitentiary to begin serving his 75 year sentence. After this court order remanding appellant to the Sheriff, the Main Street fracas occurred.

The main, downtown area of Liberty is designed in a grid style, comprised of square city blocks and parallel streets. The county jail is situated east of the courthouse. The jail is separated from the courthouse by a little more than one block and two streets.

Donald Freeman was an employee of Liberty County, working under the Sheriff of Liberty County. Freeman was escorting appellant from the courthouse to the jail. The two men paused or stopped for a moment or two at Main Street, outside of the county courthouse.

When Freeman and the appellant reached Main Street, Freeman reached and grabbed appellant's arm and told the appellant to "hold it". Immediately, appellant broke loose from Freeman and darted across Main Street. This breaking away and running from custody was without authority or permission of any type. Freeman yelled for appellant to stop. The appellant did not. Freeman was able to catch or tackle appellant in Main Street and a struggle occurred. Freeman was finally able to regain custody and control of appellant through the assistance of two passers-by, being citizens of the town.

The appellant presents three points of error. Point of error number one challenges the status of the evidence as being insufficient to convict the appellant of escaping from Donald Freeman or O.J. Stewart. The offense of Escape is delineated in TEX.PENAL CODE ANN. § 38.06 (Vernon 1994). Section 38.06, in substance, provides that a person commits an offense if he escapes from the custody when he is under arrest for, charged with, or convicted of an offense, or in custody pursuant to a lawful order of a court. The escape offense becomes a third-degree felony if the actor was arrested for or charged with or had been convicted of a felony. *See* § 38.06(a)(1), (c)(1). The Texas Penal Code sets out definitions for "Escape" and "Custody". "Custody" means being detained or under arrest by a peace officer or under restraint by a public servant pursuant to an order of a court. And "Escape" means unauthorized departure from custody. Sec. 38.01(1), (2). The argument under point one is that Donald Freeman was not a peace officer.

■ The appellant, through his brief, ably argues that TEX.CODE CRIM.PROC.ANN. art. 2.12(1) (Vernon Supp.1994) defines peace officers as sheriffs and their deputies. The Texas Local Government Code, appellant maintains, section 85.003(b), states that before a deputy may begin to perform his duties he must take and subscribe to an official oath. The oath and the appointment preceding the oath must be recorded in the County Clerk's office. Appellant argues that the appointment and the oath must be properly taken and recorded in view of TEX.LOC. GOV'T CODE ANN. § 85.003 (Vernon 1988).

The Liberty County Clerk is Wanda Barker who testified that there was no oath or appointment on file for Donald Freeman. Also—the accused's contentions are—that TEX.LOC.GOV'T CODE ANN. § 85.004(c) mandates that before a reserve deputy may act, that reserve deputy must file an oath and a bond with the County Clerk. Failing to meet these requirements, appellant says, shows that Freeman was not a deputy and was not acting as a deputy nor was he acting as a peace officer. TEX.CODE CRIM.PROC.ANN. art. 2.12(1); TEX.GOV'T CODE ANN. § 415.001(5) (Vernon 1990). In sum, appellant argues that Freeman was not a deputy and that the term "deputy" has a definite, technical, legal meaning.

Appellant seems to concede in his brief that Freeman may have been a public serv-

ant. But the appellant maintains that even if Freeman were a public servant, that the appellant was not under any restraint by Freeman pursuant to an (or any) order of court. The State argues that appellant's point of error number one is definitely multifarious and duplicitous. Nevertheless, we will address this point. Noteworthy is the position of the appellant in his brief that appellant's conviction of escape could probably be affirmed if the record demonstrates that the appellant escaped from the custody of Freeman, acting either as a peace officer, deputy sheriff, or as a public servant acting pursuant to an order of court.

The record reflects that a Liberty County Assistant District Attorney who was in charge of the sentencing of appellant, testified later that Freeman was the bailiff of the court during the trial involving the 75 year sentence. This Assistant District Attorney, Anne Streit, testified that the appellant was duly sentenced and after being sentenced was remanded to the custody of the Sheriff of Liberty County or to the Director of the Department of Corrections or any other person or official or official legally authorized to accept convicts so that the assessed prison sentences could be executed. The Sheriff of Liberty County, O.J. Stewart, was not in the courtroom at the moment.

But one of Stewart's deputy sheriffs was in the courtroom, that deputy being Freeman. Ms. Streit testified that Freeman was in a distinctive and definitive Sheriff's Department type uniform. Freeman had a deputy sheriff's insignia on his shirt, a badge, handcuffs, and other paraphernalia. Ms. Streit vowed that she knew Freeman to be a deputy sheriff and a certified peace officer. This attorney also testified that Freeman also acted in the capacity as a jailer for Liberty County.

Sheriff Stewart testified that Freeman was a peace officer and a jailer as well as serving as a deputy sheriff with Stewart's sheriff department. One of Freeman's official duties was to take charge of convicted felons and to transport them safely to the County Jail. Sheriff Stewart had specifically authorized and delegated to Freeman the authority and the duty of taking custody of this appellant after his 75 year sentencing and transporting appellant safely to the authorized jail of Liberty County. The clear, basic thrust of the sheriff's testimony was that Freeman was a deputy sheriff with Liberty County, a certified peace officer, a certified jailer, and in the employ of the Liberty County Sheriff on the date in question, being March 31, 1992.

Freeman testified that he was a certified peace officer and was in the employ of the Liberty County Sheriff's Department on the date of March 31, 1992. His employment was as a deputy sheriff and also as a jailer. The record and the evidence therein clearly supports a finding that Freeman was a peace officer. At the very least, Freeman was a de facto peace officer and/or a de facto deputy sheriff.

■ But the appellant challenges the existence of a court order. Appellant said that the Liberty County District Judge merely nodded to Freeman. Appellant urges our court to declare, as a matter of law, that a mere nod from a judge does not place any person under restraint by a public servant— and to declare, as a matter of law, that a mere nod from a Liberty County District Judge is not an order of court. The record reveals more, however.

The statement of facts shows that Freeman was a certified peace officer on March 31, 1992, the date of the sentencing of the appellant. Freeman was employed by the Liberty County Sheriff's Department and was employed by Sheriff O.J. Stewart. Freeman served as a deputy sheriff and as a jailer. Freeman was in the courtroom of the 253rd District Court, acting as bailiff on that date. He was present in court, as bailiff, when Michael McGowen was sentenced for unlawful possession of a controlled substance, namely, cocaine. The appellant on the cocaine was sentenced to prison by Judge Woods. At the trial on the escape charge Freeman identified the appellant as the same human being that had been sentenced in March for the cocaine charge. He identified and recognized the appellant as being in court. We find in the statement of facts:

Q (By Mr. Little) Okay. Mr. Freeman, did Judge Woods put the defendant, Michael McGowen, in your custody after he sentenced him to prison?

A Yes, sir, he nodded to me.

Q Did you take him into your custody?

A Yes, sir.

Q How did you go about doing that?

A I handcuffed him.

Q What was he wearing that day, do you recall, the defendant?

A Wearing an orange jail uniform.

Q Had you been present as bailiff during the entire punishment phase or sentencing phase of Mr. McGowen that day?

A I was at the sentencing phase.

Q On March 31, 1992?

A Yes, sir.

. . . .

Q Now, after Michael McGowen was placed into your custody, was he being detained by you?

A Yes, sir.

Q Was he under restraint by you?

A Yes, sir.

We note that after the sentencing was formally and finally concluded that it was only reasonable that someone had to take the appellant into custody and transport the appellant to jail and to the custody of the high sheriff. We hold that the record shows more than a mere nod; but we also concede that regular, elected district judges sitting in Liberty County are capable of nodding with great force, power, meaning, and effect. We sanguinely conclude that the Liberty County District Judge's nod was equivalent in this case to a formal, written court order.

■ Also, as a separate and independent ground for affirming the judgment and sentence of the trial court, we are aware that the indictment charged that the appellant intentionally and knowingly escaped from the custody of Donald Freeman, a peace officer and a public servant, or from the custody of O.J. Stewart, a peace officer and a public servant when the said defendant was charged with a felony, being possession of a controlled sub-

stance, namely cocaine, and the appellant was convicted of a felony, being unlawful possession of a controlled substance, namely cocaine. O.J. Stewart is the duly elected, serving Sheriff of Liberty County.

It is noteworthy and significant that the indictment does not allege that the appellant committed his escape in violation of a court order or that the appellant executed his escape contrary to and in violation of an order of court. Appellant vehemently argues the lack of a formal, written order of court eviscerates the conviction. We disagree.

Furthermore, in the court's charge to the jury in the important application paragraph, that is, the paragraph containing the respective applications of the law to the facts of the case, the court did not charge the jury concerning an escape in violation of a court order.

We observe that the application paragraph on the count of escape was correct and tracked the indictment charging escape. On Count I of the indictment there is no reference to a court order. The defendant did not complain of Count I of the indictment and went to trial on the merits. The application paragraph tracked the indictment and did not refer to a court order. No error is shown.

■ By like reasoning we affirm the conviction and sentence on Count II of the indictment. Count II charged that the appellant on or about the 31st day of March 1992 in Liberty County, Texas, and anterior to the presentment of the relevant indictment, that McGowen did then and there intentionally, knowingly, and recklessly cause bodily injury to Donald Freeman who was then and there a peace officer in the discharge of a lawful, official duty. Count II does not contain an allegation concerning a court order or lack thereof. Appellant did not challenge Count II. The application paragraph on Count II tracked and followed the indictment on the felony offense of aggravated assault. The application paragraph of the law to the facts on the aggravated assault count did not refer to or require an order of court. Appellant's contentions relevant to lack of a court order are not sustainable.

*Of relevance and importance is* TEX.CODE CRIM.PROC.ANN. art. 2.20 (Vernon 1977) entitled "Deputy". This article reads in substance that whenever a duty is imposed by this Code upon the sheriff, that same duty may lawfully be performed by his deputy. We overrule point of error one.

■ Appellant's point of error number two reads: "There is insufficient evidence to convict appellant of escaping from custody." Freeman testified that he handcuffed the appellant and since no car was available the two proceeded to walk to the Liberty County Jail. The appellant was in an orange colored jail uniform and the appellant was being restrained and detained by Freeman. The appellant wore handcuffs.

As Freeman and the appellant approached Main Street, Freeman reached up and grabbed the appellant's arm and told the appellant to "hold it." At that point the appellant broke loose from Freeman and after yanking loose, appellant darted across the street, departing completely from Freeman. This departure was not authorized in any way by Freeman and the second before this departure Freeman testified that the appellant was in Freeman's custody as a prisoner and convicted felon sentenced to serve 75 years. Appellant was ordered to stop but he did not.

Shortly after, when Freeman was able to grab the appellant, they had a violent scuffle. Freeman was trying to subdue the appellant and the appellant was resisting such efforts. Appellant seemed to prevail at first. During this scuffle, the appellant grabbed Freeman and tore Freeman's shirt and pulled Freeman down to the ground. Freeman sustained several injuries to his person. Appellant landed on top of Freeman. In addition to Freeman's effort, two citizens who were passing by, commendably assisted Freeman in subduing the appellant. Freeman was injured in both of his elbows and in his wrist.

A rational trier of fact and a rational jury could have found and did find that the appellant herein made an escape from custody. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Moreover, we are to view the evidence and the testimony in the light that is most favorable to the prose-cution. Such conduct and actions by appellant constituting an assault and a battery is per se ample evidence of escape. We overrule point of error number two.

■ Point of error three reads in substance that Count II of the indictment in cause number 19,717 should be dismissed due to a misjoinder of offenses. Count I charged an alleged escape; Count II charged an alleged aggravated assault. Appellant was tried and found guilty of both offenses by a jury on December 2, 1992. The trial judge sentenced the appellant to two 25 year terms in prison on December 8, 1992, and signed two separate judgments. The two sentences were ordered to run on a concurrent basis. Both separate judgments were filed under cause number 19,717.

The appellant boldly states and argues that he was convicted of two felonies under one indictment and that this in and of itself created a misjoinder of offenses. Appellant relies on *Ex parte Broyles*, 759 S.W.2d 674 (Tex.Crim.App.1988); *Fortune v. State*, 745 S.W.2d 364 (Tex.Crim.App.1988); *Drake v. State*, 686 S.W.2d 935 (Tex.Crim.App.1985). Appellant without equivocation maintains: "[a]n indictment may not charge more than one offense."

With commendable and laudable forthrightness, the appellant acknowledges that effective September 1, 1987, that section 3.01 of the Texas Penal Code was effectively amended to redefine the term of "criminal episode". "Criminal episode" since the effective date means the commission of two or more offenses regardless of whether the harm is directed toward or inflicted upon more than one person or item of property when the offenses are committed pursuant to the same transaction or pursuant to two or more transactions that are connected or constitute a common scheme or plan.

We conclude that the appellant's commission, as found by the jury, of felony escape and aggravated assault were committed pursuant to the same transaction or at least pursuant to two or more transactions that were connected and also constituted a common scheme or plan. The appellant failed to make a timely request for severance; the

trial court acted correctly and properly in this proceeding and properly submitted each count to the jury. *See and compare Hall v. State,* 862 S.W.2d 710 (Tex.App.—Beaumont 1993, no pet.)

The opinion in *Fortune, supra,* was based on an indictment that was returned and in effect before Art. V, § 12(b) of the Texas Constitution was adopted and before article 1.14(b) of the Code of Criminal Procedure became effective. TEX. CONST. Art. V § 12(b); TEX.CODE CRIM.PROC.ANN. art. 1.14(b) (Vernon Supp.1994). In general and in substance, article 1.14(b) provides that if the defendant does not object to a defect, error, or irregularity either of form or of substance in an indictment before the date on which the trial on the merits of that indictment begins; then that defendant waives his right to object and that defendant may not raise the objection on appeal. Appellant did not urge any sort of misjoinder of offenses to the district judge prior to trial. Point three is overruled. The judgments and sentences below are affirmed.

AFFIRMED.