In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
NO. 09-25-00213-CR

**DANIEL JOSEPH GEORGIANNI, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Court at Law**
**Liberty County, Texas**
**Trial Cause No. 23CC-CR-00982**

**MEMORANDUM OPINION**

Appellant Daniel Joseph Georgianni (Appellant or Georgianni) appeals his conviction for the misdemeanor offense of Interference with Public Duties. *See* Tex. Penal Code Ann. § 38.15(a). In the Information the State alleged that

> on or about the 17th day of August, 2023, DANIEL JOSEPH GEORGIANNI, did then and there, while Officer Charles Ortega, a peace officer, was performing a duty or exercising authority imposed or granted by law, to-wit: conducting a traffic stop, with criminal negligence, interrupt, disrupt, impede, or interfere with the said Officer Charles Ortega by refusing to exit the motor vehicle.

1

Georgianni pleaded "not guilty," but a jury found Georgianni guilty of the offense as charged in the information. Georgianni elected to have the jury assess punishment, and the jury sentenced him to "zero (0) days" jail time and assessed a $2,000 fine. The trial court accepted the jury's finding of guilty and sentenced Georgianni in accordance with the jury's verdict. Georgianni timely filed a notice of appeal. For the reasons outlined below, we affirm the trial court's judgment.

### Arguments Made at Trial about Police Officer's Oath of Office and Voir Dire Outside the Presence of the Jury

Outside the presence of the jury, the trial court allowed the defense attorney to cross-examine Officer Ortega about the oath Ortega took in 2016 and the language in Article XVI, section 1 of the Texas Constitution. During the voir dire on that issue, Officer Ortega testified that he took an oath of office on June 1, 2016, the day he began his full-time employment with the City of Cleveland as a patrol officer, and he had been with the City of Cleveland Police for about nine years and was recently promoted to Corporal. Ortega agreed that he did not take another oath again until he was promoted to Corporal on November 12, 2024. After the initial voir dire testimony, the trial court asked defense counsel what relief he was seeking on that point, and the following exchange occurred:

> THE COURT: Okay. [Defense counsel], . . . What relief -- are you asking for some relief? What are you doing?
>
> [Defense counsel]: Your Honor, we want to establish if he is up to -- if he's truly a commissioned peace officer --

2

THE COURT: You mean at the time?

[Defense counsel]: Yes, Your Honor. Yes, Your Honor. Not right now, but whether at the time he was -- his oath was up to date and correct as is necessary under the Texas State Constitution, Your Honor.

THE COURT: Okay. Say it's not. What then?

[Defense counsel]: Your Honor --

THE COURT: Are you asking me to make a determination?

[Defense counsel]: Ultimately, yes. Now, obviously the state can establish him as a de facto peace officer, but whether there was any kind of deficiency in his commission is, number one, a matter of law, which is why I am approaching it in this manner and, second, a matter before the judge.

. . . .

THE COURT: Okay. Why don't you just tell me what you think it is and maybe, as a matter of law, I can give you the relief you want.

[Defense counsel]: Your Honor, the Texas State Constitution, part one, requires this official oath of office. It requires it to be taken every two years. The statement that he has deviated slightly in the first paragraph, and furthermore, it does not include a second paragraph as concerns bribery and that he hasn't received any bribes to be in it.
    Furthermore, it must be renewed every two years. His, at the time of the offense, would have been defective by seven years. There is case law stating that even if it is otherwise defective, a peace officer's testimony, it may just be completely valid for purposes of --

THE COURT: De facto --

[Defense counsel]: For a de facto peace officer. However, that case law concerns cases wherein the person being a peace officer was not an element of the offense. This case, a person being a valid peace officer,

3

fully authorized under law, is explicitly in the elements of the offense and therefore relevant as a matter of law in fact.

THE COURT: All right. [Prosecutor], what have you got to say about that?

[Prosecutor]: As Corporal Ortega stated, he has his TCOLE training. He's been certified by TCOLE and he has made his oath of office. He has been employed with Cleveland P.D. for the past nine years, Your Honor, and, at the time, he was employed with Cleveland P.D. at the time of this offense so he was a peace officer at the time that this offense occurred.

[Defense counsel]: Your Honor?

THE COURT: Yes.

[Defense counsel]: I have not the slightest doubt that the state is going to ultimately prove that he is effective as a de facto peace officer, it's just as a matter of fact whether he was a fully commissioned peace officer for -- under the statute at the time.

THE COURT: All right. What's -- then what's the law on that? What relief do you want or what --

[Defense counsel]: That he's not a fully qualified expert witness as a peace officer, Your Honor.

THE COURT: Expert -- are peace officers considered experts?

[Defense counsel]: Yes, Your Honor.

. . . .

[Defense counsel]: Your Honor, just -- as is relevant, according to the notes on Westlaw that's coming from Vernon's Annotated, Article 10.16, Subsection 30, or of the Texas Constitution, may require a home rule city police officers to comply with the provisions of Article 16, Section 1, which requires officers to take an oath of office and to sign and file a statement before taking the oath of office every two years.

4

There is -- there is cases here stating that it may be a defect, but that because they were a valid de facto officer, it didn't matter in the case of a --

THE COURT: So just basic jury argument, is that --

[Defense counsel]: I suppose so, Your Honor.

THE COURT: On your part? Okay. Well --

[Defense counsel]: If you don't believe that this is the proper venue --

THE COURT: Well, I'm not sure. I'm not sure -- you're not asking for any relief, right?

[Defense counsel]: The only clarification as to his status as an officer and whether he is entirely an expert in that regard and I would have asked to have the oath of office admitted into evidence, and furthermore, to have the Court recognize that portion of the Texas State Constitution per judicial notice. That was the reason --

. . . .

[Prosecutor]: Under Article 2A.001 is peace officers -- peace officers, generally, it states that the following are peace officers under Subsection 3 to include the marshall or police officer of a municipality or reserve municipal police officer who holds a permanent peace officer license, under -- issued under Chapter 1701, Occupations Code, and as Corporal Ortega stated, he had his TCOLE training and licensure through TCOLE, which he currently still holds.

So under the statute, I would argue that he is a municipal police officer with Cleveland P.D. because he holds a permanent peace officer license issued under Chapter 1701.

[Defense counsel]: Your Honor, I would refer back to Article 16, Section 1, all elected or appointed officers, before they enter upon the duties of their offices, shall take the following oath or affirmation and so I don't believe that that would override.
. . . .

5

THE COURT: What's the -- I can make a finding that he was a de facto police officer?

[Defense counsel]: That's essentially -- the request is -- I mean, I think they would still have to prove that, but I don't have the slightest doubt that they're going to prove it.

. . . .

THE COURT: All right. Sit down. Call him as a witness, qualify him if you want, y'all approach the bench. I'm going to make a ruling on whether I think he's --

[Defense counsel]: A de facto or de jour --

THE COURT: De facto and then we'll take it from there.

Later during additional voir dire questioning, Ortega's 2016 oath was admitted into evidence as Defense Exhibit 1, and the trial court took judicial notice of Article XVI, section 1 of the State Constitution. Near the end of Ortega's cross-examination, the defense made another argument outside the presence of the jury about whether Ortega was a "peace officer," and the following exchange occurred:

THE COURT: Okay. All right. I think the context of this is not -- and, by the way, I don't know if anybody has testified or I don't know if you can see what kind of uniform or what kind of uniform he had on. Has he testified to that? He's plainly dressed in that or not -- or whatever -- his vehicle is clearly marked with lights and stuff, it looks like I can probably notice that, but I'm not sure of his uniform. I'm not sure. I'll address that in just a minute, but I think it looks like after this is settled, just a little bit, I think that's in some other context of maybe a -- somebody say with the Cattlemen's Association or something, you know, is that -- is that really a peace officer or not. I think this is -- I think he's clearly a de facto peace officer and I think -- I think -- I don't know how we get to this point, but I think -- I agree with that

6

procedurally and in law, that I do find that, so that's not even an issue, I don't think.

With his testimony, coupled with the video and his testimony, I think he's clearly a peace officer and I don't even think it's an element. Now, whether it's an instruction or not, now we got to face that, but I do find he's a de facto peace officer and I find any further inquiry into that is irrelevant so --

[Defense counsel]: Your Honor, the defense objects to the --

THE COURT: Okay.

[Defense counsel]: -- finding of irrelevance and we move for a mistrial.

THE COURT: Well, I think what you -- all right. You can put a bill of exception or something on if you want, that might be more appropriate, but your request for a mistrial is overruled. So -- all right. What else? You ready to move on?

[Defense counsel]: To be clear, the Court is finding that further inquiry on the subject is not relevant?

THE COURT: You know, I guess I would have to take each question as they come. Look -- look at this case.
[Defense counsel]: Can I get it before the jury?

THE COURT: Here's what the case says: But failed -- failed to conform to some precedent requirement, asked to take the oath, give a bond or the like. So I don't think it's relevant because a de facto officer -- I don't think -- I think I've made a finding and so -- now, what was that -- what does Williams say about an instruction?

[Prosecutor]: It says that the trial court required the jury in this case to find beyond a reasonable doubt that Martin was a deputy sheriff pursuant to the requirement in that statute of peace officer and the evidence -- the court further found in this case that the evidence was sufficient to support that finding and then the appeals court held accordingly the trial court did not err in overruling appellant's motion for an instructed verdict contending otherwise.

7

THE COURT: What did you just say? That what? The appeals court said that that was proper to give an instruction?

[Prosecutor]: That the court -- the trial court did not err in overruling the appellant's motion for an instructed verdict contending --

THE COURT: That he wasn't?

[Prosecutor]: -- otherwise. Exactly.

THE COURT: That he wasn't?

[Prosecutor]: That he wasn't.

THE COURT: So he didn't give an instruction? They didn't give an instruction?

[Prosecutor]: They did not give an instruction.

THE COURT: Okay. All right. But he wanted an instruction that he wasn't and the court denied that and that was not error?

[Prosecutor]: Correct.

THE COURT: Is that right? So I don't give an instruction, but I can deny the defendant's request for, one, that's he's not a peace officer?

[Defense counsel]: Your Honor, that's not -- the request is basically as soon as the jury comes back, I'm going to get on the subject and go. Is that going to be allowed by the Court or will an objection be sustained --

THE COURT: All right. What do y'all say? I think it's irrelevant. I think it's irrelevant. I think he's a de facto police officer, and therefore, all those things -- and the like, oath and bond are irrelevant.

[Defense counsel]: And thus the defense is not allowed to go into that line of questioning before the jury?

THE COURT: Yes. Yes.

8

[Defense counsel]: The defense objects.

THE COURT: Okay. All right.

[Prosecutor]: I mean, Your Honor, just going back to Williams here, this -- it says the trial court required the jury to find and so I think you could even go so far as that, but -- I mean, we feel very confident in the finding that you've already made as well, that --

THE COURT: Well, I'm not -- I'm not going to put it in the charge and I've made the finding. I'm just going to leave it at that.

[Defense counsel]: All right.

The trial court stated on the record, outside the presence of the jury, that "Officer Ortega was a de facto officer on August 17, 2023. . . . he was at least a de facto officer, if not a full-fledged valid officer." "[H]e's a de facto police officer and that included his direct testimony, plus . . . voir dire. I've made [my] ruling. …. I do find he's a de facto peace officer and I find any further inquiry into that is irrelevant[.]" The defense objected to the trial court stating it was "irrelevant" and moved for a mistrial. The motion for a mistrial was overruled.

Summary of Evidence Presented to the Jury

Testimony of Officer Ortega

At trial, Officer Charles Ortega (Ortega) testified that he began his employment as a patrol officer with the Cleveland Police Department on June 1, 2016, where he has worked for almost nine years. He completed his basic peace

9

officer academy course in 2015, obtained his license through the Texas Commission on Law Enforcement (TCOLE) and maintains that license with updated training.

According to Ortega, on August 17, 2023, he was working on a traffic incident involving a vehicle and a motorcycle at the 400 block of Belcher Street in the City of Cleveland, Texas. Ortega was coordinating the exchange of information between both drivers before the injured motorcycle driver was transported to a hospital via ambulance and getting information on the drivers involved in the accident. During his investigation, Ortega returned to his patrol car to work on the information exchange and detail for the crash report. Ortega had parked his marked patrol car in the middle of the street with its lights activated while he was working to investigate the motorcycle-car accident. A honking horn distracted Ortega. Ortega determined that the honking originated from the vehicle located directly behind his patrol car. The first time he heard the honking, Ortega did not approach the honking vehicle and continued to perform his duties relating to the accident investigation. As he was walking from the ambulance across the street to the location of the driver at fault in the accident, Ortega heard the same vehicle honking again. Ortega then stopped what he was doing, and he went to speak with the driver who was honking his horn. The honking was coming from a truck hauling an oversized load, and the driver of the truck was Georgianni. Ortega instructed Georgianni to step out of the cab of the truck, due to the height difference of Georgianni in the cab of the vehicle compared

10

to Ortega being on the ground, the need to speak to Georgianni without the sound of the truck's engine interfering, and for officer safety because Ortega could only see part of Georgianni's face. Ortega testified that as a police officer, he can request anyone to step out of their vehicle when conducting a traffic stop. Based on Ortega's experience with multiple traffic stops involving 18-wheelers, drivers usually step out of the vehicle and meet him at his patrol car. Georgianni refused to step down out of the vehicle. Ortega explained that he was conducting an initial investigation based on the honking being in violation of the City of Cleveland's Ordinance Code Section 50.32, Enumeration of a Specific Noise, and Georgianni refused to step down out of the cab and speak with Ortega. When Ortega requested Georgianni's driver's license, Georgianni asked what he was being stopped for, and after being informed that he was being detained for excessive noise, Georgianni still refused to step down out of the vehicle. Ortega received assistance at the scene from his partner, Corey Greer, and others, and he also called and requested assistance from Captain Scott Felts.

Georgianni's refusal to step down out of his vehicle resulted in a police standoff that lasted between one to two hours. Georgianni finally exited his vehicle, and an un-holstered firearm was located on the floor behind the front right passenger seat.

11

On cross-examination, while the video footage from the scene was playing, the defense questioned Ortega about the honking sound. Ortega identified the honking sounds on the video and stated the noise was coming from the 18-wheel vehicle directly behind Ortega's patrol vehicle. Ortega agreed that when he first approached Georgianni and asked him to step out of the cab of his truck, Ortega did not identify himself as a police officer or say his name or say Georgianni was being detained. Ortega agreed that Georgianni's vehicle was marked as an oversized load and it was a commercial vehicle hauling a front-end loader.

According to Ortega, in the video Georgianni can be seen inside the cab of his truck talking on his phone, and Ortega believed Georgianni was on the phone with the hostage negotiator. Ortega stated that Georgianni was never charged with a noise violation, but he was charged with "interference with public duty, resisting and unlawful carry of a weapon."[1] According to Ortega, Georgianni was placed under arrest after he exited his vehicle, and when Georgianni was placed in the patrol vehicle, he was using profanity.

_____

[1] According to the record, Georgianni was charged with three offenses by separate complaints: interference with public duties, unlawful carrying of a weapon, and resisting arrest, search, or transportation. The interference with public duties trial cause number is 23CC-CR-00982, the unlawful carrying of a weapon is trial cause number 23CC-CR-00870, and the trial cause number for the resisting arrest charge is not in our record on appeal. The record indicates that the jury found Georgianni not guilty of the misdemeanor offense of unlawfully carrying a weapon. There is no additional information in our record about the resisting arrest, search, or transportation charge.

Ortega testified on redirect examination that on the day of this incident he was wearing his police uniform, which looked much like the one he was wearing during his testimony. The uniform he was wearing at the scene had an insignia showing he was a police officer, indicated where he worked (the City of Cleveland), and had his badge displayed on it. Additionally, Ortega's patrol vehicle was clearly marked, and he had his lights on, and Ortega noted it can be seen in the video footage which shows it is parked in front of Georgianni's vehicle. Ortega identified Georgianni as the person who committed the offenses in question. Other officers on the scene, including Captain Felts, were also wearing their respective uniforms and badges, and their black-and-white vehicles were marked.

Testimony of Captain Felts

Captain Scott Felts with the Cleveland Police Department, testified that he was at the police department when he received the call from Ortega requesting a supervisor come to the scene because a driver was refusing to exit a vehicle. When Felts arrived on the scene, he could see the 18-wheeler in the road and Officers Ortega, Greer, and Crowell nearby, and he approached and asked Ortega if the driver (Georgianni) was under arrest. After speaking with Ortega, Felts turned his attention to Georgianni, and Felts personally instructed Georgianni that he was under arrest and instructed him to get out of the vehicle. Georgianni refused to step out of his vehicle or identify himself.

13

Felts explained that at the time of the incident, he had been employed with the City of Cleveland for over twenty years, and he had never had a driver of an 18-wheeler refuse to step down and talk to him. Felts assessed the situation noting that 18-wheel vehicles are large and can be used as weapons, a farm to market roadway was blocked, and a school with traffic was nearby. Felts told Georgianni that if he did not step out of the vehicle a pepper ball gun with kinetic rounds would be used to pop the vehicle window open. When Georgianni still verbally refused to comply, Felts asked Georgianni if he had a firearm. Georgianni confirmed that he did have a firearm, and Georgianni told Felts he would "use it" if he felt his safety was threatened.

At that point, Felts stated he decided to "back off" and he contacted Liberty County's Special Response Team ("SRT") to respond to what Felts described as a "barricaded subject" situation. A hostage negotiator with the county's mental health department was also called, along with the SWAT Team. In addition to the negotiator, the Chief of Police, the police department dispatcher, and a 9-1-1 operator also communicated with Georgianni by telephone. The area surrounding a nearby church was evacuated. By the end of the stand-off, at least twenty personnel were called to the scene.

Other Evidence Admitted During the Trial

Video footage taken from Ortega's and Felts's body cameras was admitted as evidence and the jury viewed the videos. Additionally, one photograph of the truck and three photos of the firearm were also admitted into evidence.

Remainder of Trial

After the testimony of Captain Felts, the State rested its case. The defense attorney moved for a directed verdict, arguing to the trial court that Ortega's testimony showed the officer failed to tell Georgianni he was conducting a traffic stop for excessive noise, the State failed to show the mens rea for "criminal negligence" or explain why Georgianni had to get out of his vehicle, and no case law exists supporting the position that failing to get out of your vehicle is sufficient conduct to constitute interference with public duties. The trial court denied the motion for directed verdict. The defense called no witnesses.

The attorneys discussed the charge outside the presence of the jury, and no record was provided of that discussion. After the jury returned to the courtroom, the defense stated on the record that the defense had no objections to the jury charge. The State and the defense gave closing arguments to the jury, the trial court read the charge to the jury, and the case was submitted to the jury. The jury returned a verdict of guilty to the charge of the misdemeanor offense of Interference with Public Duties. *See* Tex. Penal Code Ann. § 38.15(a). The defense moved for a judgment

15

notwithstanding the verdict based on "similar reasons that were listed in the directed verdict[]" and the motion was denied. Georgianni timely filed a notice of appeal.

## Issue on Appeal

In his table of contents to his appellate brief, Georgianni states his sole issue on appeal as follows: whether "the trial court abuse[d] its discretion by not allowing [defense] counsel to submit evidence regarding Officer Ortega's certifications for his peace officer's license to the jury[.]" In the "Issues Presented" section of his brief, Georgianni states his issue differently, as whether:

> [t]he Trial Court erred in prohibiting trial counsel from submitting evidence regarding an element of the offense to the jury. This violated the due process guarantees of the United States Constitution and the Texas Constitution. The Trial Court placed itself in the position of finder of fact, abusing its discretion.

## Analysis

Appellant argues that the trial court's refusal to allow the defense attorney to submit evidence to the jury on "an element of the offense" violated Georgianni's constitutional due process rights. The evidence Appellant wanted to submit at trial pertains to his argument that Ortega had failed to take an oath every two years as required in Article XVI, section 1 of the Texas Constitution.[2]

---

[2] At trial the defense attorney also argued that Officer Ortega had failed to post a bond, but on appeal the defense makes no argument about the significance of the lack of a bond.

16

Georgianni's defense attorney argued at trial, outside the presence of the jury, that Ortega was not a "peace officer" because he had failed to comply with the oath requirements, and he stated that being a "valid peace officer[]" was "an element of the offense." When asked by the trial judge what relief he was seeking from the trial court, and whether he was asking the trial court to determine if Ortega was a "de facto" peace officer, the defense attorney stated the defense believed the lack of an oath went to the qualifications of Ortega as an "expert" and whether he was a "peace officer" because he had failed to file his oaths as outlined in Article XVI, section 1.

That said, the defense failed to make any argument or objection in the trial court stating that by not allowing the defense to submit the evidence to the jury about Officer Ortega's alleged failure to take an anti-bribery oath or renew his oath every two years, the trial court was violating his due process rights, and he did not argue in the trial court that the trial court was violating his right or ability to present a complete defense.[3]

The trial court found that Ortega was a "de facto" police officer and that the issue of whether the officer took another oath every two years (or posted a bond) every two years "are irrelevant." The trial court refused to allow the defense attorney

---

[3] On appeal, the Appellant argues in his Brief that the trial court invaded the province of the jury and substituted its own determination on a fact issue that should have been decided by the jury. That argument was not made in the trial court and was not preserved. *See* Tex. R. App. P. 33.1(a).

to submit evidence to the jury about Ortega's alleged failure to take an anti-bribery oath or the failure to renew his oath every two years, and the trial court concluded it would not submit that issue to the jury. The record shows that the defense attorney did not object to the jury charge, nor did the defense attorney request any jury instructions regarding that issue.

At most, the record before us shows that the defense attorney sought to introduce evidence that Ortega's status as a "peace officer" was "deficient because of his failure to renew his oath of office every two years and to swear to an anti-bribery statement[,]" and Ortega's defense attorney stated in his argument to the trial court that establishing that Ortega was a "peace officer" was an element of the offense.

With respect to an evidentiary challenge, we apply an abuse-of-discretion standard of review, and the trial court's decision to admit or exclude evidence will not be reversed if it is within the zone of reasonable disagreement. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). In Georgianni's appellate brief, he does not provide any substantive argument about how the trial court abused its discretion in refusing to allow the defense to submit the evidence he wanted to introduce to the jury. Here, the Appellant does not support his argument regarding an abuse of discretion with appropriate citations to any authorities and does not adequately explain how his complained-of error resulted in harm. *See* Tex. R. App.

18

P. 38.1. Where, as here, a party fails to adequately brief a complaint on appeal, the complaint is waived. *See Swearingen v. State*, 101 S.W.3d 89, 100 (Tex. Crim. App. 2003) (citing Tex. R. App. P. 38.1).

Rather on appeal, Georgianni contends that the trial court erred by "prohibiting trial counsel from submitting evidence regarding an element of the offense to the jury[]" which he contends "violated the due process guarantees of the United States Constitution and the Texas Constitution[,]" and "[t]he Trial Court placed itself in the position of finder of fact[]" on the issue of whether Officer Ortega was acting as a "peace officer." He then argues we should review his issue on a "de novo" basis.

"It has long been held that a failure to lodge a timely objection to evidence offered during trial precludes a defendant from later complaining, even if the alleged error were of constitutional dimension." *Hill v. State*, 633 S.W.2d 520, 523 (Tex. Crim. App. 1981) (citing *Gibson v. State*, 516 S.W.2d 406 (Tex. Crim. App. 1974); *Ex parte Bagley*, 509 S.W.2d 332 (Tex. Crim. App. 1974); *Shumake v. State*, 502 S.W.2d 758 (Tex. Crim. App. 1973)). As a prerequisite to presenting a complaint on appeal, the record must show that the complaint or argument made during the trial comports with that made on appeal or the alleged error is forfeited. Tex. R. App. P. 33.1(a); *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012). If a party fails to properly object to constitutional errors at trial, the errors may be forfeited. *Clark*,

365 S.W.3d at 339. To determine if the complaint Georgianni made at trial comports with the complaint being made on appeal, we look at the context of the objection and the shared understanding of the parties at the time, as shown in the record. *See id.*

After examining the entire record, we find nothing to indicate that either the judge or prosecutor understood Georgianni's evidentiary complaint or requests to be complaints of a denial of due process. *See id.* at 340. Similarly, we find nothing in the record that indicates the judge or prosecutor understood Georgianni's complaint to be that the trial court was usurping the role of the jury or that Georgianni was being denied the ability to present a defense. Therefore, we conclude that Appellant never put the trial court on notice of the complaints he now articulates in his appellate brief, and those complaints were not preserved. *See* Tex. R. App. P. 33.1(a). Appellant's argument in his brief does not comport with his objection at trial. *See id.* An objection stating one legal basis may not be used to support a different legal theory on appeal. *See Sterling v. State*, 800 S.W.2d 513, 521 (Tex. Crim. App. 1990); *Hawkins v. State*, 964 S.W.2d 767, 769 (Tex. App.—Beaumont 1998, pet. ref'd) (constitutional claims were forfeited because they were not raised during trial).

Georgianni's attorney argued at trial that Ortega had failed to file his oath, and Georgianni initially explained at trial that he wanted to present that argument to the jury because it would go to whether Ortega was "an expert[.]" Georgianni's attorney

stated at trial that he had no doubt that the State would prove that Officer Ortega was at least a "de facto peace officer[,]" and defense counsel agreed at trial that the trial court could make a finding on that issue. The trial court eventually ruled that even if Ortega had not filed his oath, the State proved that Ortega was a "peace officer" as defined in the statute, or at a minimum a "de facto peace officer[,]" and the filing of the oath was irrelevant. Based on the record, we cannot say that the trial court abused its discretion by not allowing Georgianni to present the oath-of-office evidence to the jury. *See Tillman*, 354 S.W.3d at 435.

De Facto Peace Officers and Sufficiency of the Evidence

In *Freeman v. State*, the Court of Criminal Appeals upheld a conviction for capital murder of a peace officer, even though the record demonstrated the officer had not filed a notarized oath of office with the county clerk. 556 S.W.2d 287, 303-04 (Tex. Crim. App. 1977). The Court determined that based on the evidence the victim was a "de facto" deputy sheriff and hence was a peace officer under the capital murder statute. *Id*. at 304. In *Williams v. State*, the Court of Criminal Appeals affirmed a conviction for aggravated assault on a peace officer because the victim was shown to be a "de facto" deputy sheriff. 588 S.W.2d 593, 594-95 (Tex. Crim. App. 1979). Similarly, our Court in *McGowen v. State*, 885 S.W.2d 285, 287-89 (Tex. App.—Beaumont 1994, no pet.), affirmed the convictions of the defendant for escaping from a peace officer and for aggravated assault on a peace officer when the

21

officer was shown to be a "de facto" officer. And in *Teevan v. State*, the Fourteenth Court of Appeals found the officer was a "de facto" peace officer and it overruled a sufficiency challenge to a conviction of attempted capital murder made by the appellant arguing the evidence was insufficient to show an officer was a "peace officer" when the officer failed to show he had taken the oath and posted a bond. No. 14-02-01051-CR, 2003 Tex. App. LEXIS 6993, at *5 (Tex. App.—Houston [14th Dist.] Aug. 14, 2003, no pet.) (mem. op., not designated for publication).

In *Williams*, the Court of Criminal Appeals used the following definition of a "de facto" peace officer:

> one who has the reputation of being the officer, and yet is not a good officer in point of law; in other words, the de facto officer is one who acts under color of a known and valid appointment, but has failed to conform to some precedent requirement, as to take the oath, give a bond, or the like.

588 S.W.2d at 595 (quoting *Weatherford v. State*, 21 S.W. 251 (Tex. Crim. App. 1893). Officer Ortega was not an elected or appointed officer, but assuming without deciding that Article XVI, section 1,[4] applies to Ortega and that it requires a patrol

---

[4] Article XVI, section 1 states as follows:
(a) All elected and appointed officers, before they enter upon the duties of their offices, shall take the following Oath or Affirmation:
    "I, _____, do solemnly swear (or affirm), that I will faithfully execute the duties of the office of _____ of the State of Texas, and will to the best of my ability preserve, protect, and defend the Constitution and laws of the United States and of this State, so help me God."

officer in his position to file the oath as outlined therein every two years, on this record, we agree with the trial court that Ortega was a "de facto" peace officer. The record conclusively establishes that Ortega was a duly trained and licensed "peace officer," held a TCOLE commission, that he was employed by the City of Cleveland Police Department as a patrol officer, and he was conducting the duties of that job at all relevant times.

On the date of the alleged offense, section 1.07(36) of the Texas Penal Code defined a "peace officer" as a person, elected, employed, or appointed as a peace officer as stated in the Texas Code of Criminal Procedure Article 2.12. Article

---

(b) All elected or appointed officers, before taking the Oath or Affirmation of office prescribed by this section and entering upon the duties of office, shall subscribe to the following statement:

"I, _____, do solemnly swear (or affirm) that I have not directly or indirectly paid, offered, promised to pay, contributed, or promised to contribute any money or thing of value, or promised any public office or employment for the giving or withholding of a vote at the election at which I was elected or as a reward to secure my appointment or confirmation, whichever the case may be, so help me God."

(c) Members of the Legislature, the Secretary of State, and all other elected and appointed state officers shall file the signed statement required by Subsection (b) of this section with the Secretary of State before taking the Oath or Affirmation of office prescribed by Subsection (a) of this section. All other officers shall retain the signed statement required by Subsection (b) of this section with the official records of the office.

Tex. Const. art. XVI, § 1.

23

2.12(3) defined "peace officers" to include "police officers of an incorporated city, town, or village, and those reserve municipal police officers who hold a permanent peace officer license under Chapter 1701, Occupations Code."[5]

Georgianni does not dispute that Ortega was fully certified and licensed by the State of Texas as a peace officer at the time in question, and he was employed by the City of Cleveland as a police officer. Rather, Georgianni argues that because Ortega had failed to file an oath of office since he first filed his original oath and began working as a police officer with the City of Cleveland, he was not a "valid peace officer." Georgianni's defense attorney stated to the trial judge that he had "no doubt" that the State could show that Ortega was a "de facto peace officer," but even after the State proved Ortega was at a minimum a "de facto peace officer," the defense counsel requested that the trial court allow him to present evidence to the jury that Ortega had not filed the oaths that are required under Article XVI, section 1 of the Texas Constitution.

A person commits the misdemeanor offense of Interference with Public Duties if the person with criminal negligence interrupts, disrupts, impedes, or otherwise interferes with a peace officer while the peace officer is performing a duty

---

[5] Effective January 1, 2025, article 2.12(3)'s "peace officer" definition was repealed and replaced with substantively the same definition included in Tex. Code Crim. Proc. Ann. art. 2A.001(3)). *See* Act of June 12, 2023, 88th Leg., R.S., ch. 765 § 1.001, 2023 Tex. Gen. Laws 1839, 1841 (codified at Tex. Code Crim. Proc. Ann. art. 2A.001(3)).

or exercising authority imposed or granted by law. Tex. Penal Code Ann. § 38.15(a), (b). The elements of the offense are: "'(1) A person (2) With criminal negligence (3) Interrupted, disrupted, impeded, or otherwise interfered with (4) A peace officer (5) While the peace officer was performing a duty or exercising authority imposed or granted by law.'" *Galynsky v. State*, No. 09-23-00238-CR, 2025 Tex. App. LEXIS 4673, at **11-12 (Tex. App.—Beaumont July 2, 2025, pet. ref'd) (mem op., not designated for publication) (quoting *Roemisch v. State*, No. 11-15-00090-CR, 2017 Tex. App. LEXIS 12112, at *10 (Tex. App.—Eastland Dec. 29, 2017, no pet.) (mem. op., not designated for publication)).

During a traffic stop, a police officer, as a matter of routine, can order a person to get out of a vehicle. *See Goodwin v. State*, 799 S.W.2d 719, 727 (Tex. Crim. App. 1990). The *Goodwin* Court expressly noted that police officers are allowed to order drivers to get out of their cars when they have been lawfully stopped. *See id.* Notably, the *Goodwin* Court cites to *Pennsylvania v. Mimms*, 434 U.S. 106, 110-11 (1977), wherein the Supreme Court found that an officer's safety is a legitimate reason for asking a driver to get out of the car, and any additional intrusion can only be described as *de minimis*. In *Mimms*, the Supreme Court stated, "What is at most a mere inconvenience to the driver cannot prevail when balanced against legitimate concerns for the officer's safety." *See* 434 U.S. at 111. The *Goodwin* Court found that "[a]n officer is allowed to establish a 'face-to-face confrontation' which

25

'diminishes the possibility, otherwise substantial, that the driver can make unobserved movements; this, in turn, reduces the likelihood that the officer will be the victim of an assault.'" 799 S.W.2d at 727 (quoting *Mimms*, 434 U.S. at 110); *see also Laurent v. State*, No. 01-16-00350-CR, 2017 Tex. App. LEXIS 2272, at *8 (Tex. App.—Houston [1st Dist.] March 16, 2017, no pet.) (mem. op., not designated for publication) (concluding that the *Goodwin* Court's reasoning applies equally to an officer's instruction to a driver to get back into his vehicle).

Here, Officer Ortega testified that Georgianni continued honking his horn while the City of Cleveland police officers were in the middle of an accident investigation, that Officer Ortega instructed Georgianni to get out of the vehicle because he wanted to communicate with Georgianni face-to-face, and the honking was a noise violation. Ortega also explained that for safety reasons he needed Georgianni to exit the cab of his truck because the officer could not see into the cab due to the height of the cab, but Georgianni refused to exit and get out. Captain Felts also testified that he told Georgianni he was under arrest, and he ordered Georgianni to exit the vehicle, and Georgianni still refused to exit his vehicle.

To the extent, if any, Georgianni is challenging the legal sufficiency of the evidence, we note that the jury is the exclusive judge of the credibility of the evidence and the weight to be given to that evidence. *Metcalf v. State*, 597 S.W.3d 847, 855 (Tex. Crim. App. 2020). As such, the jury is responsible for resolving

26

conflicts in the testimony, is free to believe some, all, or none of the testimony, and may assign as much or as little weight to a witness's testimony as it sees fit. *Id.* Jurors may also draw reasonable inferences from the evidence. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). "[A]n inference is a conclusion reached by considering other facts and deducing a logical consequence from them." *Id.* at 16. When examining whether a criminal conviction is supported by legally sufficient evidence, we compare the evidence to the elements of the offense as defined by a hypothetically correct charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). We consider all the evidence, viewed in the light most favorable to the verdict, along with the inferences that could reasonably be drawn from the evidence. *Hooper*, 214 S.W.3d at 13. We do not assess the credibility of the evidence, reweigh the evidence, nor substitute our judgment for that of the jury. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The evidence is legally sufficient to support the conviction if a rational trier of fact could have found each of the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). "Each fact need not point directly and independently to a defendant's guilt, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Balderas v. State*, 517 S.W.3d 756, 766 (Tex. Crim. App. 2016) (citation omitted); *see also Garcia v. State*, 667 S.W.3d 756, 761-62 (Tex. Crim. App. 2023) (citation omitted) ("A proper review of

evidentiary sufficiency considers the cumulative force of the evidence."). A "hypothetically correct jury charge accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Alfaro-Jimenez v. State*, 577 S.W.3d 240, 244 (Tex. Crim. App. 2019). "As authorized by the indictment" means the statutory elements of the offense as modified by the charging instrument. *Id.*

On the record before us, a reasonable jury could have concluded that Officer Ortega was a "peace officer" performing a duty or exercising authority imposed or granted by law at the time he instructed Georgianni to exit his vehicle. Ortega was wearing his police uniform, he was in a police vehicle, and his overhead lights were flashing when he stopped his vehicle in the roadway to investigate a motorcycle-automobile accident. It is undisputed that Georgianni stopped his truck directly behind Ortega's police vehicle, the police vehicle's emergency lights were flashing, and Georgianni honked his horn while sitting in his truck. When Officer Ortega approached and asked Georgianni to step out of his vehicle because of the honking, which Officer Ortega explained was a noise violation, the matter then escalated because Georgianni refused to comply. Both Officer Ortega and Captain Felts exercised their lawful authority as peace officers and ordered Georgianni to exit the vehicle and Georgianni refused to comply. Viewed in a light most favorable to the

28

verdict, a rational trier of fact could find beyond a reasonable doubt that Georgianni, with criminal negligence interrupted, disrupted, impeded, or otherwise interfered with a peace officer, while the peace officer was performing a duty or exercising authority imposed or granted by law. *See* Tex. Penal Code Ann. § 38.15(a); *Hooper*, 214 S.W.3d at 13.

Having overruled Appellant's issue, we affirm the trial court's judgment.

AFFIRMED.

LEANNE JOHNSON
Justice

Submitted on December 22, 2025
Opinion Delivered March 4, 2026
Do Not Publish

Before Golemon, C.J., Johnson and Chambers, JJ.

29